# DARREN S. FIELDS

### ATTORNEY AT LAW

26 COURT STREET, SUITE 1400 • BROOKLYN, NEW YORK 11242
Phone: (718)246-7103 • Cell: (917)887-7729 • Emails: Ddfields721@aol.com

January 29, 2024

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District Court
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. Moeleek Harrell et al.
> Criminal Docket No. 20-239 (S-8)(BMC)

Dear Judge Cogan:

I write this letter as the attorney for Moeleek Harrell to address the government's motion in limine seeking to admit (1) enterprise evidence related to the charged enterprise, (2) statements by defendants and their co-conspirators including through witness testimony, phone communications, social media correspondence, YouTube videos, and recorded jail calls; (3) evidence of "other acts including evidence of uncharged shootings, sex trafficking, marijuana trafficking, sexual assaults, fraud and other "scamming" activity, and physical and psychological abuse – as direct evidence of the charged crimes or alternatively pursuant to Rule 404(b) of the Federal Rules of Evidence; (4) evidence of the defendants' significant and unexplained wealth; (5) proof of news articles, from phones records and published sources, to show motive and consciousness of guilt; (6) evidence of defendants' prior convictions, terms of incarceration, and terms of supervision; and (7) authentic records, and certain records kept in the ordinary course of business using certifications, pursuant to rule 902.

## BACKGROUND

On October 17, 2023, defense counsel for Harrell filed the first motion to suppress evidence outlined in ECF filing 1338 with Exhibits 1-3. On October 23, 2023, defense counsel filed additional motion in limines as it relates to Co-Conspirators hearsay statements, ECF filing 1345 and to preclude Mr. Harrell's prior convictions, ECF filing 1346. On November 17th, 2023, the government filed their opposition as it relates to Mr. Harrell and all other co-defendants, ECF filing 1389. On November 24, 2023, defense counsel for Harrell filed a more expansive reply with Exhibits 1-16 in response to the government's opposition. See ECF filing 1401. On

December 4, 2023, the government filed a second response to Mr. Harrell's reply with an additional Exhibit. On December 31, 2023, the court issued an Order indicating that the court "is not sure that it has sufficient record to resolve the issue of why officer Santiago upgraded Harrell's I-card to an I-card with probable cause, and whether such a record is necessary to resolve the issue of whether the arrest January 21, 2019 was valid." The court further stated, "assuming that the arrest and subsequent detention were unconstitutional, the government's position on the scope of evidence that would be suppressed is not clear to the Court." The court further stated, "assuming that the arrest and subsequent detention were unconstitutional, the government's position on the scope of evidence that would be suppressed is not clear to the Court." The court further stated that since "the Government did not address these issues in its 1420 sur-reply the government is directed to submit an additional sur-reply letter memorandum forthwith on these issues." On January 3, 2024, the government filed another response in accordance with the court's order. See ECF filing 1455 with exhibit A - Declaration.

On January 8, 2024, the court issued its order as it relates to Pre-Trial motions. Mr. Harrell's motion to suppress was deferred. Mr. Harrell's motion to preclude co-conspirators statements were denied and Mr. Harrell's motion to preclude prior convictions were granted in part and deferred in part. On January 10, 2024, the court held oral arguments on the remaining issues that were not decided in the court's order. See ECF filing 1461. The court asked the government specific questions as it relates to the issues for Mr. Harrell's January 2019 arrest and detention. The court acknowledged that law enforcement lies, and the government agreed with the court. The court indicated that it should look at this matter as a Franks issue where there are clear false statements used to make out probable cause. The government's argument to the court was that despite the false statements the court could still find probable cause for Harrell's arrest without pointing to a single sworn statement or fact to support probable cause for Harrell's arrest and detention. The court asked the government in sum and substance, I guess you really wanted Mr. Harrell? The government responded that they really wanted Mr. Harrell.

Without reiterating the previously filed motions, the government has conceded that there was no probable cause to arrest and detain Mr. Harrell in January of 2019. The government conceded in open court that they really wanted Mr. Harrell and did not care what they had to do to get him. As outlined in Mr. Harrell's previously filed motions, all evidence outlined in the motion should be suppressed and precluded from Mr. Harrell's upcoming trial. If the court suppresses the evidence detailed in Mr. Harrell's motion to suppress, it will eliminate most if not all of the government's request in their motion in limine filed on January 19, 2024. See ECF filing 1482.

In the alternative, I will address the government's motion in limine seeking to admit (1) enterprise evidence related to the charge enterprise, (2) statements by defendants and their co-conspirators including through witness testimony, phone communications, social media correspondence, YouTube videos, and recorded jail calls, (3) evidence of other acts including evidence of uncharged shootings, sex trafficking, marijuana trafficking, sexual assaults, fraud and other "scamming" activity and physical and psychological abuse - as direct evidence of the charge crimes or alternatively pursuant to rule 404(b) of the Federal Rules of Evidence, (4) evidence of the defendant significant and unexplained wealth, (5) proof of news articles from phone records and published sources, to show motive and consciousness of guilt, (6) evidence of

defendants prior convictions, terms of incarceration, and terms of supervision, and (7) authentic records and certain records kept in the ordinary course of business using certifications pursuant to rule 902. The government claimed that they should be allowed to introduce the above-mentioned evidence because they are not unduly prejudicial. Defendant Harrell disagrees with the government's opinion and requests that the court denies the government's request.

Furthermore, the government wants to restrict Mr. Harrell's defense by precluding him from (1) referring to prior acquittals and dismissals, (2) offering their own hearsay statements to avoid testifying and being subject to cross-examination, (3) attacking the conduct, motives and timing of the government investigation, (4) mentioning any consequences attended to the defendant's conviction including punishment, and (5) introducing personal details to elicit jury sympathy.

1. Cooperating Witnesses

The government stated in their motion on page 20 that they intend to present multiple cooperating witnesses who will name Harrell as the gang's leader. However, the government did not specify in their motion that their cooperating witnesses would identify Harrell committing specific crimes. In light of the lack of information about the identification of the government's cooperating witnesses and what the witnesses will specifically say about Mr. Harrell, I respectfully request the court reserve a decision on this issue.

2. Photographs, Videos, and Social Media

On page 21 of the government's motion, the government requests to offer photographs and videos including cell phone evidence and social media records. Mr. Harrell addressed suppression of evidence obtained from cell phones recovered from Harrell in his motion to suppress evidence which is still pending.

The government also intends to introduce a May 11, 2017, video posted to YouTube that includes an interview with multiple individuals. At the time the video was posted, Mr. Harrell had been in jail since September of 2015. In fact, Mr. Harrell was on trial in Kings County the day of the video posting and none of the individuals in the video were present during Mr. Harrell's trial. Mr. Harrell's jury found him not guilty of all charges fifteen (15) days after the posting of the YouTube video.

In the May 11, 2017, YouTube video, one of the individuals, Johnson says, "Google my man Moe. Google my man YB, n*****. Charles, n****. Google my man, Marly G, N****. Johnson goes on to say down for bodies. Beat bodies. All that. Google my n*****, man. These statements are extremely prejudicial and outweighs any probative value considering it references Mr. Harrell's incarceration and referred to Charles and Marly G who were all killed. Furthermore, it suggests that Mr. Harrell is down for bodies and may have beat bodies even though Harrell was on trial at the time. This video could confuse a jury and make the jury improperly believe that Mr. Harrell was in jail for killing someone and may have beaten the murder case before even finishing his trial. The government would like to introduce this highly

3

prejudicial video even though the prejudice outweighs any legitimate probative value in accordance with Rule 403. <u>United States v. Mickens</u>, 926 F. 2d 1323 (2d Cir. 1991). Furthermore, the government claims they have cooperating witnesses to do exactly what this YouTube video would do.

### 3. Tattoos

Law enforcement recently took photographs of Mr. Harrell's body that cannot be seen unless he is without clothing. On page 28 of the government's motion, the government specifically references Harrell's "Fuck tha Fedz" tattoo for the purposes of prejudicing Mr. Harrell. The government suggested the tattoo is to show disdain for law enforcement. Even though Mr. Harrell has been pulled over and arrested by law enforcement many times, he has never shown any violence or disrespect towards law enforcement. Showing disdain or dislike for law enforcement after unlawful arrests and stops is a legitimate basis to have disdain as long as Mr. Harrell does not physically act on this disdain. The government once again would like to introduce this evidence despite its prejudicial value highly outweighs any probative value.

### 4. Music

The government would like to introduce music from individuals including BG Styx AKA Rashad Brown who was killed while Harrell was incarcerated. In the lyrics referenced in the government's motion on page 29, BG Styx talks about Moe being jammed up and dropping YB's killer. There's nothing to suggest that Mr. Harrell advised Styx to make the song considering Mr. Harrell was incarcerated. Once again, the government's interest in introducing this evidence is to cause extraordinary prejudice against Mr. Harrell compared to any probative value.

### 5. Jail Calls

The government specifically refers to a jail call between what's purported to be between Joell Joyce and Harrell regarding Tyquan Lane on page 31 of the government's motion. This conversation took place on June 5, 2018. The government characterized a fight between Tyquan Lane and others and made it seem like Harrell set the terms of the fight. The discussion starts off with Joyce telling Harrell that he heard from Ave that someone took money out of Berm's wallet and then talked crazy about it. During the conversation, Harrell says, "I don't got nothing to do with that situation." Harrell also says, "Why would I give you something to go and put?" Harrell makes it perfectly clear he is not involved in anyone's business. Harrell also tells them to stop doing their ******** because Dee will hurt him. The government attempts to mischaracterize the call to make it seem like Harrell ordered the fight when Harrell was trying to stop the problem. I object to calls like this because it seems clear that the government will attempt to mischaracterize these conversations at trial. The prejudicial value far outweighs any probative value considering the way the government intends to mislead and confuse the jury.

4

6. Legal Tactics

The government intends to introduce evidence at trial that multiple members and associates consulted, were represented by, or were contacted by an attorney who represented Harrell. The government claims on page 35 of their motion that in a recorded jail call an incarcerated member, Member 1, spoke to Harrell about a conversation between Member 1 and Attorney 1. It is alleged that Member 1 sought Attorney 1's advice about a state case. It is my understanding Member 1 is not charged in this subject case and he never retained the services of Attorney 1. The reference to Attorney 1 has no relevance to the case at hand. It is another attempt to prejudice Mr. Harrell based on his reference to Attorney 1. Furthermore, the government would like to further prejudice Harrell because he asked family members to assist with his legal fees while incarcerated.

On page 43 of the government's motion, the government indicates they would like to introduce evidence of marijuana dealing including text messages and photographs depicting marijuana being sold. The government specifically referred to text messages from phones seized from Harrell to show he intends to sell marijuana. The government also attached photographs of marijuana from Harrell's phone on page 44. In Harrell's motion to suppress, Harrell asked the court to suppress all evidence recovered from the cell phones. Furthermore, these phones were recovered in excess of five (5) years, yet the government chose not to charge Mr. Harrell with marijuana charges. Now, the government would like to present evidence of uncharged crimes of marijuana dealing in their case in chief to show Harrell has committed additional crimes. The prejudicial value heavily outweighs any probative value considering Mr. Harrell was not charged with the subject crimes. The government would just like to show Mr. Harrell's propensity to commit uncharged crimes.

On page 44 of the government's motion, the government indicates that they would like to introduce evidence that Harrell attempted to determine the identity of a person whose name was redacted in materials in a state murder case. It is indicated in the government's motion that Harrell inquired of the person, but the government does not reveal that person denied they were the person. Furthermore, nothing was done to the person. This is another attempt by the government to prejudice Mr. Harrell. This information has no relation to the subject case other than to confuse the jury and make Mr. Harrell look bad.

Prior Arrests, Convictions, and Incarceration History

The government seeks to offer evidence of prior arrests, convictions, and incarcerations statuses of Harrell. As it relates to Harrell, the government would like to introduce Harrell and Charles Williams' 2008 federal indictment and conviction in the Western District of Virginia for conspiracy to traffic cocaine base. This arrest and conviction were when Harrell was 18 years old and occurred 16 years ago. The government is once again using evidence of a prior conviction to show Mr. Harrell's propensity to commit crimes. This conviction is even more prejudicial considering it's terribly similar to the charges in the subject indictment. The government claims this evidence will provide relevant background which is not an element of the crime. The prejudicial value of this information will easily outweigh the probative value because it distracts

5

the jury from the subject evidence and may cause the jury to infer, since Mr. Harrell committed the crime before, he must have done it this time.

According to page 46 of the government's motion, they would like to introduce Harrell's incarceration at Rikers Island from September 2015 to May 2017 because he was incarcerated when Charles Williams was killed in September of 2015. This evidence is extremely prejudicial in light of the fact Mr. Harrell was falsely charged during that period and was finally acquitted of all charges on May 26, 2017. The government should be precluded from introducing any evidence related to Mr. Harrell's incarceration based on double jeopardy and collateral estoppel.

The government indicate in their motion on page 46 that they would like to introduce Harrell and Ayers' 2017 arrest near 1625 Fulton Street. At the time of Harrell's arrest, he was arrested sitting in a vehicle that did not belong to him. Mr. Harrell was arrested for criminal trespass and possessing a small amount of marijuana. The vehicle was taken and searched resulting in no contraband being recovered. However, the government indicates an intention to introduce an irrelevant jail call where it is claimed Harrell spoke to someone in "coded" language that a firearm was in a concealed "trap" compartment and had a third party retrieve the gun before police were able to get a search warrant. Once again, the government is attempting to introduce a witness to interpret a general conversation of an uncharged crime. This evidence is irrelevant and extremely prejudicial. It is another attempt to show propensity in an attempt to confuse the jury as to the issues of this trial.

The government would like to introduce evidence related to Harrell's September 2018 arrests for possessing marijuana and then possessing two firearms the following day after the New York City Police Department destroyed Harrell's vehicle. Mr. Harrell went to trial on the subject charges and was acquitted on all charges in August of 2023. A jury determined the issue at hand that Harrell did not possess firearms and that the subject car did not contain a trap. It was a radio apparently ripped apart by the New York City Police Department. Since the jury decided the issue, double jeopardy and collateral estoppel applies. Furthermore, this evidence is extremely prejudicial compared to its probative value. Additionally, this evidence is part of Mr. Harrell's motion to suppress.

The government would like to introduce Harrell's incarceration at Rikers Island beginning in January 2019 and his continued detention throughout the Rikers Island drug trafficking scheme. Mr. Harrell filed his motion to suppress all evidence related to Mr. Harrell's unlawful arrest and detention at Rikers Island under Manuel v. City of Joliet. Furthermore, a jury has decided the issue at trial attaching double jeopardy and collateral estoppel. Additionally, this evidence is extremely prejudicial compared to its probative value.

The government indicates on page 46 and 47 of their motion that they would like to introduce evidence of Harrell's arrest in 2018 and 2019 including the January 2019 arrests for murder, during which cellular devices were seized by law enforcement. All of these cell phones are part of Mr. Harrell's pending motion to suppress. As a result, Mr. Harrell will not stipulate the introduction of the unlawfully seized materials from the cell phones.

The government argues Harrell's prior arrest and convictions are admissible as direct evidence of the charged crimes, as inextricably intertwined other-acts evidence, and as rule 404 (b) evidence relevant for non-propensity purposes. The government is wrong because they are trying now to show Harrell's propensity by using a conviction Harrell accepted responsibility for when he was just 18 years old and crimes he did not commit resulting in dismissals. Ostensibly, the government is trying to make Mr. Harrell look bad instead of presenting evidence relevant to the charges in this indictment.

Mr. Harrell's incarceration with Charles Williams is not relevant to this case. As discussed above, the government is trying to show Harrell's propensity to commit crimes. Furthermore, the government is trying the bootstrap Harrell's conviction and incarceration with Latrell Johnson's video mentioning two individuals coming from the feds. Furthermore, the government admit on page 48 of their motion that this will "show a long-standing criminal relationship" between Harrell, who was incarcerated at the time, and Charles Williams who had been killed a year and a half earlier. The evidence of Harrell and Charles Williams' incarceration is highly prejudicial with no probative value other than to show propensity for old crimes.

The government would like to introduce Harrell's incarceration from September 2015 to May 2017 because they believe it explains why Harrell waited two years after the death of Charles Williams before targeting John Doe #3. After Harrell was falsely arrested and detained by law enforcement for almost 2 years, the government would like to now use Harrell's false detention to benefit their case while also attempting to deprive Mr. Harrell of the ability to bring up his acquittal to defend himself. It is inherently unfair that the government even make this request. The government also claims this explains why Ayers, not Harrell, was running the day-to-day operations of the Maine drug trafficking scheme during this time. Once again, the government would like to use Harrell's false arrest and detention to support the government's theory despite having alternatives to proving their case such as cooperating witnesses, social media, and jail calls.

The government argues Harrell's 2017 arrests with Ayers and their efforts to obstruct the discovery of evidence during that arrest should be admissible. According to the arrest complaint, Harrell was arrested alone while sitting in the driver's seat of a parked 2013 Volkswagen Jetta in front of 1615 Fulton Street, not 1625 Fulton Street on August 16, 2017, at 1:13 PM. Mr. Harrell was charged with criminal trespass and possession of a small amount of marijuana. Furthermore, NYPD obtained a search warrant for the vehicle and did not find any additional contraband. As addressed above, the government is using an uncharged crime just to show Harrell's propensity to commit crimes no matter how big or small.

The government argues that the September 2018 arrest is admissible as direct evidence of the charge crimes despite Harrell's acquittal on all charges. The government claims the evidence of the arrest supports that Harrell's vehicle used on June 27, 2018, had a "trap" and shows the modus operandi of "traps" in Harrell's vehicle to commit the crime. This argument is disingenuous by the government in light of six days earlier, the same vehicle was stopped in Maine by then State Trooper Jodell Wilkinson and other Troopers at the request of NYPD's Detective Christopher Vickery. Detective Victory told Maine Troopers that Mr. Harrell is known to have traps in his car and transport drugs and firearms. As a result of this information, Maine

Troopers detained Mr. Harrell for approximately 3 hours while they used canines and X-ray machines to look for traps, guns, and drugs. Maine Troopers did not find anything illegal and let Mr. Harrell leave in the subject vehicle without even a ticket. Please see previously filed motions to suppress, exhibits along with the government's responses.

As it relates to Mr. Harrell's incarceration from 2019, I addressed it in the motion to suppress and also above.

The government argues that under rule 403, the probative value of Harrell's arrests, convictions, and incarcerations outweigh any risk of undue prejudice. First, the government failed to address the double jeopardy and collateral estoppel issue based on Harrell's acquittals. Second, the government assumes the court will deny Harrell's pending motions to suppress evidence after acknowledging in court during oral arguments that law enforcement lies and may have lied just to arrest and detain Harrell without a basis to do so. Lastly, the government is clearly trying to throw every arrest or interaction Mr. Harrell had with law enforcement into this case whether it occurred 16 years ago or resulted in an acquittal just to bolster the current charges against Harrell. It's the government's claim that since Harrell is charged with participating in multiple attempted murders, multiple drug trafficking schemes, bribery, and money laundering offenses, the fact of these prior arrests and convictions for drug trafficking "are not especially worse or shocking than the transaction charge." Mercado, 573 F.3d at 142. This statement is outrageous considering it is unlikely John Doe #3 is going to testify at trial considering he is in jail for murdering another person just last year. The video surveillance of the murder was on the news where John Doe #3 executed an individual. It is also doubtful that the Stukes will testify at trial considering the government provided Brady material where the witnesses denied Harrell's involvement in the shooting. As it relates to the Maine drug Conspiracy, it is believed there isn't going to be a single person or evidence to suggest Harrell provided drugs or assisted with that operation.

Violence Targeting Harrell and Others

The government would like to introduce evidence that Charles Williams was shot and killed by John Doe #3, an individual currently incarcerated for killing another individual on video last year. This evidence is extremely prejudicial even though it may be relevant. If the court allows such evidence to be admitted, Mr. Harrell request that the entire story come in including the fact that John Doe #3 had multiple gun cases and is currently in jail for killing someone last year.

The government would like to introduce evidence that Harrell and his then pregnant girlfriend were shot at by the Stukes Crew. In fact, Harrell's girlfriend was shot in the nose during this unprovoked assassination attempt. If the court allows such evidence to be admitted, Mr. Harrell requests that the entire story be admitted including how the Stukes members were identified and whether the Stukes members were arrested and charged to complete the narrative of the story.

8

Statements after Criminal Acts

The government requests to introduce calls with then incarcerated Franklin Gillespie and Ayers and Harrell on various dates. The calls are general conversations that the government interprets to suggest is related to the shooting of the Stukes Crew. The conversations are not explicit and subject to inaccurate interpretations which could confuse the jury.

## DISCUSSION

A bedrock tenet of our criminal justice system is a defendant's right to defend charges brought against him. As the U.S. Supreme Court has held, "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984). If a defendant has the constitutional right to an opportunity to present a complete defense, then it follows that a defendant has the constitutional right to an opportunity to offer evidence that some third party committed the crime, in order to raise a reasonable doubt in the jury's mind that the defendant is guilty. Richmond v. Embry, 122 F.3d 866, 872 (10th Cir. 1997) (defendant is deprived of a fundamentally fair trial if evidence is suppressed that "if admitted would create reasonable doubt that did not exist without the evidence").

These principles of criminal law correlate with the principle behind Federal Rule of Evidence ("FRE") 404(b). FRE 404(b) establishes another foundational tenet of federal law: a defendant must be tried only for the charged offense, not for past crimes, wrongs, acts, or for who he is as a person.[1] The rule allows admission of a defendant's other bad acts only for certain limited purposes, including proving the defendant's intent, motive, identity, and plan, and courts must protect the defendant against unfair prejudice using the procedure outlined by the U.S. Supreme Court in Huddleston v. United States, 485 U.S. 681, 691-92 (1988). In Harrell's case, the government would like to violate the spirit of the rule by trying Harrell on past arrests, convictions, and acquittals. It is clear that the government would like to introduce all of these events for no other reason than to show propensity to commit crimes or associate with individuals who have committed crimes. As discussed for each event above, the prejudice of each event separately and cumulatively grossly outweighs any probative value.

FRE 404(b) specifies:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

---

[1] McCormick on Evidence Section 190 (1984).

The first sentence of the rule, when applied to defendants, embodies the belief not "that the evidence is irrelevant" but rather "that juries will tend to give it excessive weight, and . . . that no one should be convicted of a crime based on his or her previous misdeeds." [2] The second part of the rule provides for the admission of other acts if they are not offered to prove propensity; in other words, if they are not offered for the purpose of suggesting an inference that the person acted on the occasion in question consistently with his character. [3]

The seminal U.S. Supreme Court opinion addressing 404(b) is *Huddleston v. United States.* [4] In *Huddleston*, the defendant had been convicted in federal court of possessing stolen property in interstate commerce after trial that hinged upon whether *Huddleston* knew the video cassette tapes, he was accused of possessing were stolen property. To prove Huddleston's knowledge, the prosecutor had introduced other-act evidence under 404(b) that on past occasions Huddleston had offered to sell a large quantity of televisions and appliances at a low price to various people. While it was established that at least some of the appliances were stolen, there was no direct evidence that the televisions were stolen besides the large quantity, low price, and the fact that Huddleston was working with the same man, Leroy Wesby, to sell the televisions and appliances. In *Huddleston*, the court discussed four safeguards for ensuring that evidence of other acts, which for a defendant is always prejudicial, does not unfairly prejudice the person against whom it is brought. These four safeguards are the requirement of proper purpose under FRE 404(b); the requirement of relevancy under FRE 402; the trial court's balancing of probative value and danger of unfair prejudice under FRE 403; and the mandate under FRE 105 that, upon request, the court instruct the jury that the evidence of other acts be considered for its proper purpose only. Huddleston v. United States, 485 US. 681, 691-92 (1988). As discussed above, the government's arguments for each piece of evidence they would like to introduce do not pass the *Huddleston's* safeguards and are intended to be introduced for the sole purpose of propensity or just to make Mr. Harrell look bad.

As discussed above, the government would like to introduce evidence regarding cases where Harrell was tried and found not guilty on all charges. It is Harrell's contention that all evidence relating to those acquittals are inadmissible under the Double Jeopardy and Due Process Clauses of the Fifth Amendment of the United States Constitution. The Double Jeopardy Clause incorporates the doctrine of collateral estoppel. Dowling v. United States, 493 US 342 (1990).

In *Dowling*, a defendant who had allegedly robbed a bank while wearing a ski mask and carrying a small handgun was tried in the District Court of the Virgin Islands for the federal crimes of bank robbery and armed robbery and for various offenses under Virgin Islands law. During the trial, the prosecution, relying on Rule 404(b) of the Federal Rules of Evidence – which provides that evidence of other crimes, wrongs, or acts may be admissible against a defendant for purposes other than character evidence – offered testimony by a woman who stated that (1) two men had entered her house 2 weeks after the bank robbery, one of them wearing a knitted mask, of a different color from that worn by the bank robber, and carrying a small handgun; (2) she had unmasked this man after a struggle; and (3) he had been the defendant. This

---

[2] United States v. Daniel, 770 F.2d 1111, 1116 (D.C. Cir. 1985).
[3] Fed. R. Evid. 404(b) advisory committee's note.
[4] 485 U.S. 681 (1988).

testimony, the prosecution asserted, was properly offered for the purpose of (1) strengthening the identification of the defendant as the bank robber by showing him wearing a mask and carrying a gun similar to those used by the robber, and (2) linking the defendant to the other man involved in the intrusion at the witness' home, which man had also been spotted at the scene of the bank robbery in what the prosecution believed had been the intended getaway car. The District Court (1) allowed this testimony, over defense objections, (2) instructed the jury that the defendant had been acquitted of charges stemming from his alleged intrusion at the witness' home, and (3) stressed the limited purposes for which the testimony was offered. Id. As it relates to Harrell's case, there is no one who can identify Harrell committing the charged crimes as it relates to his acquittals compared to *Dowling*. Furthermore, the court in *Dowling* made sure to avoid prejudicing the defendant by telling the jury *Dowling* was acquitted of the charges and gave a limited instruction. In Harrell's case, the government would like to introduce Harrell's arrest without advising the jury that he was acquitted of all charges in a clear attempt to mislead the jury and deprive Mr. Harrell of his constitutional right to defend himself.

The collateral-estoppel doctrine prohibits the Government from relitigating an issue of ultimate fact that has been determined by a valid and final judgment. Ashe v. Swenson, 397 U.S. 436 (1970). In accordance with *Ashe*, Harrell's acquittals at trial "could only have meant that the jury was unable to conclude beyond a reasonable doubt that the defendant was one of the bandits." Ib. at 445. In Huddleston v. United States, 485 US at 681, the court held that in Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude the act occurred and that the defendant was the actor." Dowling v. United States, 493 US at 348-349. The court further stated in Dowling that "because a jury might reasonably conclude that Dowling was the masked man who entered Henry's home, even if it did not believe beyond a reasonable doubt Dowling committed the crimes charged." Here, collateral estoppel applies to Harrell because the court was provided with the minutes from Harrell's previous trial, and it clearly reveals there was no evidence to show Harrell participated in the crimes of which he was acquitted. Furthermore, the person who committed the murder in Harrell's prior case told prosecutors and law enforcement that he committed the murder and Harrell was not involved.

"The overriding concern is that 'to permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant, so that 'even though innocent he may be found guilty." Huddleston, at 355. "This rule also protects a defendant against being compelled 'to live in a continuous state of anxiety and insecurity' about whether he will be retried and from the 'embarrassment, expense and ordeal' of an actual prosecution." Ib. at 356 (quoting Green v. United States, 355 US 184, 187 (1957). In a criminal case, collateral estoppel prohibits the Government from relitigating any ultimate facts resolved in the defendant's favor by the prior acquittal. Thus, in addition to being protected against retrial for the "same offense," the defendant is protected against prosecution for an offense that requires proof of a fact found in his favor in a prior proceeding. Ib.

"Whenever a defendant is forced to relitigate the facts underlying a prior offense for which he has been acquitted, there is a risk that the jury erroneously will decide that he is guilty of that offense. That risk is heightened because the jury is required to conclude that the defendant committed the prior offense only by a preponderance of the evidence." Ib. at 361. "One of the

dangers inherent in the admission of extrinsic offensive evidence is that a jury may convict the defendant not for the offense charged but for the extrinsic offense." Ib. "This danger is particularly great where . . . the extrinsic activity was not the subject of a conviction; the jury may feel the defendant should be punished for that activity even if he is not guilty of the offense charged." Ib. at 362. "Thus, the fact that the defendant is forced to relitigate his participation in a prior criminal offense under a low standard of proof combined with the inherently prejudicial nature of such evidence increases the risk that the jury erroneously will convict the defendant of the presently charged offense." Ib.

The government in Harrell's case isn't just trying to introduce evidence related to Harrell's acquittals and dismissals, they also want to restrict Harrell from defending against the claims. However, Dowling makes it clear that Harrell has a right to defend the claims. In Dowling, the court stated, "The Court's only response is that the defendant is free to introduce evidence to rebut the contention that he committed the prior offense. This response, of course, underscores the flaw in the Court's reasoning: introduction of this type of evidence requires the defendant to mount a second defense to an offense for which he has been acquitted." Ib. at 362. "Moreover, because of the significance a jury may place on evidence of a prior criminal offense, presenting a defense against that offense may be as burdensome as defending against the presently charged offense." Ib.

## The Court Should Not Empanel an Anonymous and Partially Sequestered Jury

The jury measures the government are requesting are meant to deprive Mr. Harrell of his constitutional right to a fair trial.

The government has outlined in their motion on page 100 when the "Court may impose measures such as anonymity and sequestration." The standard announced is "upon (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant to ensure that his fundamental rights are protected."

In support of the government's argument, the government refers to the nature of the charges including murder and the potential jail sentences as an "incentive to tamper with the jury." As it relates to Harrell, he is not charged with murder, and we believe the charges contained in the indictment are inappropriate. Further, Mr. Harrell has been tried on multiple prior cases including murder where the juries were not sequestered. There was never a hint of improper conduct or jury tampering in any of the previous trials.

The government also suggest that individuals possibly providing bail or offering to assist with legal representation to friends or family is indicative of someone interfering with the judicial process. This argument is entirely speculative and unsupported by Harrell's previous trial history. In an attempt to support the government's argument, the government claims Harrell asked an individual whether he was an individual in a court document unrelated to this case. As it relates to that communication, Harrell did not threaten or intimidate anyone and there was no offer to bribe. The subject communication did not show a propensity to intimidate or harass anyone.

12

The government references Terrell Ratliff's family reaching out to Mr. Harrell and asking Harrell to lend Ratliff a portion of the money needed to assist Ratliff in obtaining an attorney for Ratliff's State case. What the government failed to inform the Court is that Harrell did not give Ratliff's family money for legal fees. In fact, Ratliff continued with his assigned counsel until pretrial hearings commenced in the State case.

Based on Mr. Harrell's previous trial history and the government's lack of details to support a need for protective measures for the jury, Mr. Harrell respectfully requests that the Court rejects the government's attempt to deprive Mr. Harrell of a fair trial.

The government further suggests by conducting "a voir dire designed to uncover bias as to issues in the cases and as to defendant himself" will properly protect Mr. Harrell. However, highlighting the sequestration and the dangers posed to potential jurors will grossly prejudice Mr. Harrell and result in an unfair trial.

If the Court improperly grants the government's jury request, the inappropriate measures will "infringe" on Mr. Harrell's "constitutional rights." Therefore, the Court should deny the government's request.

<u>Conclusion</u>

For the reasons set forth above, the Court should deny the government's request in all respects.

Sincerely,

*Darren Fields*

Darren Fields

All Counsel of Record (By ECF)

13