

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DGR/LRO/JML/VAZ                     *271 Cadman Plaza East*
F. #2018R00788                          *Brooklyn, New York 11201*

                                    March 22, 2024

**TO BE FILED UNDER SEAL**

By ECF and E-mail

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

              Re:   United States v. Moeleek Harrell, et al.
                    Criminal Docket No. 20-239 (S-8) (BMC)

Dear Judge Cogan:

              The government respectfully submits this letter in advance of the March 25, 2024
New York Pod trial in the above-referenced matter to (1) advise the New York Pod defendants of
information concerning certain witnesses pursuant to Giglio v. United States, 405 U.S. 150
(1972), and (2) requests that the Court preclude the defendants from cross-examining the
witnesses about, or otherwise offering evidence related to, the information identified below at
trial.[1]  The government does not concede the relevance or admissibility of the enclosed
information but provides it in an abundance of caution.

---

            [1]      In addition to the material described in this letter, the government previously
disclosed, to the New York Pod defendants, material pursuant to 18 U.S.C. § 3500, which also
includes Giglio information.  The government hereby notifies the New York Pod defendants and
their counsel that this letter and its contents constitute "Sensitive Discovery Material" pursuant
to the Protective Order entered in this case.

I.      Disclosures[2]

    A.      Out-of-State Witnesses

For out-of-state witnesses, the government has paid (or will pay) for travel and lodging expenses.  For non-incarcerated cooperating witnesses, in advance of trial and during trial, the government has paid (or will pay) for the witnesses' travel and lodging expenses, including for pre-trial preparation and trial testimony.  For law enforcement and civilian witnesses, the government has provided travel expenses and lodging at a standard rate in connection with their travel to New York for testimony at trial.

    B.      Cooperating Witnesses

The government discloses that, on several occasions during mealtime meetings, the government provided meals to cooperating witnesses.  The meals varied but, as a general matter, consisted of something akin to pizza or a sandwich and a drink, with each meal costing approximately $15.  In addition, as noted above, the government has paid for cooperating witnesses' travel expenses, including hotels, for pre-trial preparation and trial testimony.

Additional information specific to each cooperating witness is disclosed below.

    1.      Cooperating Witness #2 ("CW-2")

As noted above, as to CW-2, the government has previously disclosed records relating to ████████████████████████████████████████████ pursuant to 18 U.S.C. § 3500.  In addition, the government discloses that ████████████



    2.      Cooperating Witness #3 ("CW-3")

As noted in the Section 3500 material produced to date, CW-3 has prior convictions, including the following:

–   ████████████████████████████████████████████ and ████████

–   ████████████████████████████████████████████ ████████████████.

―――――――――――――――

[2]      For the Court and defense counsels' convenience, witnesses expected to testify during the first days of trial are denoted with an asterisk.  The government intends to provide a supplemental Giglio disclosure with respect to witnesses expected to testify later during trial.



3.    Cooperating Witness #4 ("CW-4")

C.    Out-of-State Law Enforcement Witnesses

1.    Travel and Accommodations

As noted above, the government has provided travel expenses and lodging at a standard rate for out-of-state local law enforcement witnesses in connection with their travel to New York for their testimony at trial, including Domestic Violence Investigator Ron Blodgett of the Somerset County, Maine District Attorney's Office; Lieutenant Jodell Wilkinson of the Maine State Police; and Corporal Blaine Silk of the Maine State Police.

2.    Maine State Police Corporal Blaine Silk*



3.    New Hampshire State Police Trooper Timothy Berky*

D.    New York City Police Department ("NYPD") Witnesses

1.    NYPD Sergeant Danielle Marino

2.    NYPD Detective Omar Garib

3.    NYPD Detective Konstantin Genin



4.    NYPD Detective David Pulice

5.    NYPD Detective Richard Schell

6.      NYPD Police Officer Krystelyn Aponte

7.      NYPD Police Officer Daniel Briguglio

8.      NYPD Police Officer Devon Hudson

9.      NYPD Police Officer Reinaldo Rodriguez



10. <u>NYPD Police Officer Vengavil Mathew</u>

███████████████████████████████████████████████
███████████████████████████████████████

11. <u>NYPD Police Officer Courtney Vishawadia</u>

███████████████████████████████████████████████
███████████████████████████████████

12. <u>NYPD Detective Matthew Janisch</u>

███████████████████████████████████████████████
██████████████████████████████

13. <u>NYPD Detective Adam McLawhorn</u>

███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████

███████████████████████████████████████████████
████████████████████████████████████

14. <u>NYPD Sergeant Shennil Manley</u>

███████████████████████████████████████████████
██████████████████████████████████████

███████████████████████████████████████████████
████████████████████████

15. <u>NYPD Detective Errol Bhagan</u>

███████████████████████████████████████████████



16.   NYPD Detective Vyacheslav Polosin

E.   Assistant Inspector General Alfred Hernandez

F.   Expert Witness Compensation

As noted in certain material produced to 18 U.S.C. § 3500, the government discloses that Zhanna Georgievskaya, M.D., an expert witness and medical examiner formerly employed by the New York City Office of Chief Medical Examiner, will be compensated for preparation and courtroom testimony, including as set forth in 3500-ZG-06.

G.   Civilian Witnesses





## APPLICABLE LAW

Rule 404(a) prohibits the admission of "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a); United States v. Pujana-Mena, 949 F.2d 24, 29 (2d Cir. 1991) ("Federal Rule of Evidence 404(a) provides, with specific enumerated exceptions, that character evidence is generally inadmissible."). Rule 404(a) sets out a narrow exception for a witness's character, permitting evidence of a witness's character only if it is admissible under Rules 607, 608, or 609. Fed. R. Evid. 404(a)(3). These rules, in turn, allow a witness's character for truthfulness to be attacked, but they sharply limit how that attack can be advanced. Fed. R. Evid. 608(b).

### I.      Rule 608(b)

One well-settled limitation is Rule 608(b)'s categorical bar to the introduction of extrinsic evidence to prove specific instances of a witness's untruthfulness. See ECF No. 138 at 15; see also United States v. Peterson, 808 F.2d 969, 973-74 (2d Cir. 1987); United States v. Brown, No. 07-CR-874 (KAM), 2009 WL 497606, at *3 (E.D.N.Y. Feb. 26, 2009) ("Under the plain mandate of Rule 608(b), extrinsic evidence of a witness's prior conduct may not be admitted to attack his truthfulness.").[3] The Rule also addresses the permissible scope of cross-examination regarding specific instances of a witness's conduct—it "is intended to be restrictive" and "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness." United States v. Nelson, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005) (quoting Weinstein & Berger, Weinstein's Federal Evidence § 608.22[2][c][i] (2d ed. 1997)). The Advisory Committee notes explain why—the "possibilities of abuse are substantial" in cross-examination, as a result, specific instances may be explored only if they bear on truthfulness, are "not remote in time," and are not "outweighed" by, among other things, "danger of unfair prejudice" and "confusion of issues." Fed. R. Evid. 608. Thus, Rule 608 permits cross-examination concerning specific instances of conduct, if at all, only insofar as the conduct in question is "probative of truthfulness or untruthfulness." United States v. Flaharty, 295 F.3d 182, 191–92 (2d Cir. 2002); see United States v. Rosa, 11 F.3d 315, 336 (2d Cir. 1993)

---

[3]      "A general attack on credibility is, concededly, a collateral matter." United States v. Treacy, 639 F.3d 32., 45 (2d Cir. 2011).

9

(upholding district court's preclusion of cross-examination on alleged rape and burglary by witness because conduct did not bear directly on credibility and allegations were unsubstantiated).

Even when questioning may satisfy the requirements of Rule 608, inquiry into specific instances of conduct may be further curtailed in order to "protect [a] witness from harassment or undue embarrassment," Fed. R. Evid. 611(a)(3), or where the "probative value" of such evidence "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, . . . undue delay, [or] waste of time," Fed. R. Evid. 403.  See United States v. Sampson, 898 F.3d 287, 309 (2d Cir. 2013) ("[A] district court is accorded broad discretion . . . [to] impose reasonable limits on cross-examination to protect against, e.g., harassment, prejudice, confusion, and waste." (internal quotation marks omitted)); United States v. James, 712 F.3d 79, 102 (2d Cir. 2013) ("[A] district court may impose reasonable limits on cross-examination to protect against, e.g., harassment, prejudice, confusion, and waste.").  The Court may bar cross-examination on matters only marginally relevant to an issue in dispute.  See United States v. Maldonado-Rivera, 922 F.2d 934, 955-56 (2d Cir. 1990); see also United States v. Lawes, 292 F.3d 123, 131-32 (2d Cir. 2002) (affirming district court's preclusion of cross-examination on a prior adverse credibility finding against a law enforcement officer by CCRB because "proposed cross-examination was of little, if any, plausible relevance to [officer's] credibility" regarding officer's "motivation to lie about the circumstances of [defendant's] arrest in the present case").

II.    Rule 609

Under Rule 609(a), an impeaching party intending to offer a conviction "is generally limited to establishing the bare [or essential] facts of the conviction: usually the name of the offense, the date of the offense, and the sentence."  United States v. Brown, 606 F. Supp. 2d 306, 319 n.8 (E.D.N.Y. 2009) (citation omitted); accord United States v. Estrada, 430 F.3d 606, 617 (2d Cir. 2005).  Rule 609(a)(1)(A) covers felony convictions for a witness and provides that essential information for such convictions generally "must be admitted, subject to Rule 403."  Rule 609(a)(2) covers non-felony convictions and provides that essential information for such convictions "must be admitted if the [C]ourt can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."  "Congress narrowly defined" the terms "dishonest act" and "false statement" "because of the Rule's inflexible lack of discretion and potential for prejudice."  United States v. Payton, 159 F.3d 49, 57 (2d Cir. 1998).  Rule 609(a)(2) is "restricted to convictions that bear directly on the likelihood the [witness] will testify truthfully (and not merely on whether he has a propensity to commit crimes)."  Dougherty v. Cty. of Suffolk, No. 13-CV-6493 (AKT), 2018 WL 1902336, at *3 (E.D.N.Y. Apr. 20, 2018) (emphases in original) (quoting United States v. Hayes, 553 F.2d 824, 827 (2d Cir. 1977)).  Convictions for crimes such as "armed robbery, burglary[,] and petit larceny have been deemed to fall outside the ambit of this rule."  Id.; accord Martin v. Nat'l R.R. Passenger Corp., No. 97-CV-8381 (RLE), 1998 WL 575183, at *3 (S.D.N.Y. Sept. 9, 1998) (requiring "deliberately deceitful" conduct, as opposed to merely "negligent" activity, underlying the conviction).

Rule 609(b) further imposes a time restriction of 10 years on the admissibility of conviction-related impeachment evidence as set forth in Rule 609(a).  If more than 10 years have passed since the witness' conviction or release from confinement for it (whichever is later),

evidence of the conviction is "admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b); see also United States v. Mahler, 579 F.2d 730, 734 (2d Cir. 1978) (requiring on-the-record findings). The heightened standard of Rule 609(b) requires that the evidence have a greater probative value than that required under Rule 609(a).  See Brown, 606 F. Supp. 2d at 313 (collecting sources). Accordingly, under Rule 609(b), "convictions over 10 years old [should] be admitted very rarely and only in exceptional circumstances," because such convictions "generally do not have much probative value."  Id. (alteration in original) (quoting Fed. R. Evid. 609(b) advisory committee's note).

III.    Rules 401 and 403

Rules 402 and 403 further limit the admission of evidence under Rule 608 or 609. In the context of witness impeachment, Rule 402 demands that the evidence be relevant to the issue of truthfulness.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). Meanwhile, Rule 609(a)(1)(A) expressly refers to Rule 403 balancing.  In applying Rules 403 and 609(a)(1)(A) together, federal courts consider "(1) the impeachment value of the prior conviction; (2) the remoteness of the prior conviction; (3) the similarity between the prior conviction and the conduct at issue; and (4) the importance of the credibility of the witness." Maize v. Nassau Health Care Corp., No. 05-CV-4920 (ETB), 2012 WL 139261, at *2 (E.D.N.Y. Jan. 18, 2012).

Beyond Rule 609(a)(1)(A), Rule 403 directs trial courts to exclude any relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, . . . , undue delay, wasting time, or needlessly presenting cumulative evidence."  Accord United States v. Figueroa, 548 F.3d 222, 229 (2d Cir. 2008); Brown, 2009 WL 497606, at *4; United States v. Devery, 935 F. Supp. 393, 407-08 (S.D.N.Y. 1996).  A trial court's Rule 403 balancing will be upheld on appeal unless it is "arbitrary and irrational."  United States v. Desposito, 704 F.3d 221, 234 (2d Cir. 2013).

11

<u>ARGUMENT</u>

I.    <u>Cooperating Witnesses</u>

        The government moves to preclude or otherwise limit cross examination certain topics concerning the cooperating witnesses, as set out below.

    A.    <u>CW-2</u>

        The Court should preclude questioning designed to simply harass CW-2 under the guise of probing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  The government does not object to limited questioning on those topics that bears on CW-2's ability to perceive and subsequently recall the events recounted in CW-2's testimony.  However, broader questioning would serve only to embarrass CW-2 and would not be relevant to CW-2's testimony or truthfulness.

    B.    <u>CW-3</u>





C.   <u>CW-4</u>

The Court should preclude any cross examination of CW-4 related to the two disciplinary incidents described above: ████████████████████████ ████████  Neither disciplinary incident is relevant to CW-4's credibility as neither involved any dishonesty.  Nor does either of these incidents involve any allegation of bias.  Therefore, these incidents should be precluded as irrelevant to any proper topics of cross examination.

II.     Law Enforcement Witnesses

    A.     Unsubstantiated Allegations, Civil Lawsuits, and Substantiated Allegations Not Involving Truthfulness

        As to each of the government's law enforcement witnesses, the Court should preclude cross-examination of those witnesses regarding the above-described administrative investigations that substantiated allegations against them, as well as the above-described civil suits in which they are named as defendants.  "As a general matter, '[c]omplaints against officers are not probative of a law enforcement witness's truthfulness or untruthfulness unless the underlying conduct involves dishonesty.'"  United States v. Daniels, 566 F. Supp. 3d 191, 194 (E.D.N.Y. 2021) (alteration in original) (quoting Bryant v. Serebrenik, No. 15-CV-3762 (ARR), 2017 WL 713897, at *2 (E.D.N.Y. Feb. 23, 2017)).

        The Second Circuit has affirmed a district court's decision to deny cross-examination of an NYPD sergeant about an unrelated CCRB case because the "underlying conduct" in that case—specifically, ordering a strip search and not reporting it as required— "involved no dishonesty."  United States v. Horsford, 422 F. App'x 29, 30 (2d Cir. 2011).  The CCRB report thus "could not have been probative of the [officer's] truthfulness or untruthfulness."  Id.  Moreover, district courts have repeatedly precluded cross-examination about unrelated complaints or administrative charges where the conduct did not involve witness credibility.  See, e.g., United States v. Jackson, No. 19-CR-356 (ARR), 2020 WL 6738155, at *2 (E.D.N.Y. Nov. 16, 2020) (precluding cross-examination IAB cases and civil lawsuits because they "do not contain any findings related to the credibility of the officers"); United States v. Johnson, 469 F. Supp. 3d 193, 230 (S.D.N.Y. 2019) (precluding cross-examination about an allegation that an officer consumed alcohol while on duty because the IAB report would "not measurably assist the jury in making a credibility determination as to [the officer's] testimony"); United States v. Barret, No. 10-CR-809 (KAM), 2012 WL 194992, at *1-2 (E.D.N.Y. Jan. 23, 2012) (precluding cross-examination about various substantiated CCRB charges where those "prior substantiated complaints d[id] not involve conduct that bears on credibility"); United States v. Polanco, No. 10-CR-627 (RPP), 2011 WL 1795293, at *4 (S.D.N.Y. May 3, 2011) (precluding cross-examination regarding substantiated CCRB complaint of stop and frisk without reasonable suspicion because "there is no information suggesting that [the officer] . . . was found by the CCRB to be incredible"); Stone, 2007 WL 4410054, at *1 (precluding cross-examination of an officer about, among other things, pending CCRB investigation of a complaint alleging an "unauthorized search of a vehicle" because the "substance of the CCRB complaint" was not "probative of truthfulness or untruthfulness").

        None of the underlying conduct described in administrative allegations listed above involved dishonesty or other conduct probative of their character for truthfulness.  Indeed, many of the substantiated claims pertain to minor violations of internal NYPD rules—violations that have no bearing on the credibility of the witnesses concerning their involvement in this case.  See, e.g., United States v. Lawes, 292 F.3d 123, 131-32 (2d Cir. 2002) (finding no error in the district court's reasoning that the potential probative value of such evidence was substantially outweighed by "the risk of distraction" because the "Review Board's prior finding provides nothing of value with respect to [the witness]'s motivation to lie about the circumstances of [the defendant]'s arrest in the present case.").  This remains true even where the administrative panel

like the CCRB has made credibility assessments as part of its investigation.  See United States v. Barret, No. 10-CR-809 (S-4) KAM, 2012 WL 194992, at *4 (E.D.N.Y. Jan. 23, 2012) (allowing cross examination on credibility findings, but ruling that counsel "shall in no event, however, mention or refer the specific incidents underlying each of the substantiated complaints").

In addition, the government moves to preclude cross-examination about the lawsuits naming the law enforcement officers listed above.  The civil actions were settled out of court or dismissed without a credibility determination.  Unsubstantiated allegations in a complaint have no probative value regarding the witness's character for truthfulness.  See Jackson, 2020 WL 6738155, at *2; United States v. Dekattu, No. 18-CR-474 (ARR), 2019 WL 885620, at *1 (E.D.N.Y. Feb. 22, 2019) (precluding cross-examination of police officer about allegations in civil lawsuit where lawsuit did not include any findings of fact or credibility); United States v. Ahmed, No. 14-CR-277 (DLI), 2016 WL 3647686, at *3 (E.D.N.Y. July 1, 2016) (precluding cross-examination of government witnesses about prior civil lawsuits because "[t]he Court does not consider the existence of a complaint containing unproven allegations . . . probative of the witness' truthfulness"), Saldarriaga v. United States, No. 99-CV-4487 (WK), 2002 WL 449651, at *4 (S.D.N.Y. Mar. 21, 2002) ("Unsubstantiated civil rights allegations made against [a detective] . . . have no bearing on his character or truthfulness.").  Because the lawsuits contained no substantiated allegations regarding the law enforcement officers' credibility, the defendants should be precluded from cross-examining the witnesses on these topics.

    B.    Adverse Credibility Findings

Even where an officer has previously been found not credible, a district court retains discretion to preclude cross-examination on the subject.  Thus, in United States v. Cruz, the Second Circuit held that the district court acted within its discretion in precluding questioning regarding a prior instance where a government informant had been found not credible by a fellow district court judge.  894 F.2d 41 (2d Cir. 1990).  As the Second Circuit explained, (1) in the prior case, the district court found the informant "lacked credibility as to his testimony in that case, not that he was lacking in veracity generally," and (2) "[i]n the absence of any connection between the subject of [the informant's] testimony in [the prior case] and his testimony in the case at bar, it cannot be said that [the district court's] finding as to the former is relevant in any way to a resolution of the issues in [the current] case."  Id. at 43.

In United States v. Cedeno, the Second Circuit enumerated five additional factors for district courts to consider when weighing whether to preclude questioning as to a prior adverse credibility finding, in addition to the two factors addressed in Cruz:  "(1) whether the lie was under oath in a judicial proceeding or was made in a less formal context; (2) whether the lie was about a matter that was significant; (3) how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness; (4) the apparent motive for the lie and whether a similar motive existed in the current proceeding; and (5) whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible."  644 F.3d 79, 83 (2d Cir. 2011).

A district court's weighing of the factors is reviewed for abuse of discretion.  Id. at 81.  No one factor or set of factors is controlling, and even after Cedeno, reliance on the two Cruz factors alone can be sufficient to preclude or allow cross-examination.  See United States v.

<u>White</u>, 692 F.3d 235, 249 n.7 (2d Cir. 2012) ("[W]e leave open the possibility that in certain cases, consideration of only the two <u>Cruz</u> factors might be appropriate and support an evidentiary ruling.").



III.    <u>Civilian Witnesses</u>



IV.    Conclusion

For the foregoing reasons, this Court should preclude the defendant from cross-examining the government's witnesses regarding the above-described conduct and matters.

The government also respectfully seeks leave to file this letter motion under seal, with certain information redacted from the publicly filed version.

In connection with judicial proceedings, "a qualified First Amendment right of access extends 'to a pretrial hearing on a . . . motion to preclude the use of certain evidence at trial,' as well as to '[w]ritten documents filed in connection with pretrial motions.'" United States v. Martoma, No. 12-CR-973 (PGG), 2014 WL 164181, at *3 (S.D.N.Y. Jan. 9, 2014) (alterations in original) (quoting In re N.Y. Times Co., 828 F.2d 110, 114 (2d Cir. 1987)). However, the existence of such a right of access "does not end the inquiry." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006). Specifically, notwithstanding the public's right of access, a court may find sealing certain matters appropriate where "specific, on the record findings are made" showing that such sealing "is essential to preserve higher values and is narrowly tailored to serve that interest." Id. (quoting In re N.Y. Times Co., 828 F.2d at 116). As the Second Circuit has noted, the privacy interests of third parties may be a compelling reason justifying such sealing. See United States v. Amodeo, 71 F.3d 1044, 1050–51 (2d Cir. 1995) ("We have previously held that '[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation.'" (quoting Gardner v. Newsday, Inc. (In re Newsday, Inc.), 895 F.2d 74, 79–80 (2d Cir. 1990))).

Here, the privacy interests of the potential witnesses discussed above serve as a compelling reason for sealing. See, e.g., Amodeo, 71 F.3d at 1050-51. Much of the information set out above is non-public, relates to ongoing civil proceedings, or otherwise reveals non-public findings of other administrative bodies. See Hughes Hubbard & Reed LLP v. Civilian Complaint Review Bd., 41 N.Y.S.3d 369 (Sup. Ct. Aug. 17, 2016) (refusing to order CCRB to disclose complaint-related information, finding that civilian complaints to CCRB constituted "personnel

---

4

records" exempt from disclosure under the New York State Freedom of Information Law).  The government's interest in safeguarding their privacy outweighs the public's qualified right to access the information described in this letter.

                                        Respectfully submitted,

                                        BREON PEACE
                                        United States Attorney

                          By:      /s/
                                        Drew G. Rolle
                                        Lindsey R. Oken
                                        Joy Lurinsky
                                        Victor Zapana
                                        Assistant U.S. Attorneys
                                        (718) 254-7000

cc:     Clerk of the Court (BMC) (by ECF)
        Counsel for New York Pod Defendants (by ECF)