UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                    :

UNITED STATES OF AMERICA,         :

                                    :

              - against -          :    20-cr-239 (BMC)

                                    :

DERRICK AYERS, *et al.*,            :

                      Defendants.    :

                                    :

-------------------------------------------------------- X

 

**COURT'S PROPOSED JURY CHARGE**

TABLE OF CONTENTS

**I.**      **GENERAL RULES** ................................................................ 6

    A.      PARTIES TO THE JUDICIAL PROCESS AND JUROR DUTIES ......................... 6

        *Juror Attentiveness* ..................................................................... 6

        *Role of the Court* ......................................................................... 6

        *Duty of the Jury* .......................................................................... 6

        *Juror Oath* .................................................................................. 7

        *Jury to Disregard the Court's View* ........................................... 7

        *All Persons Equal Under the Law* .............................................. 7

        *Improper Considerations* ........................................................... 7

        *Punishment Should Not be Considered* ...................................... 8

    B.      BURDEN OF PROOF & PRESUMPTION OF INNOCENCE ................................. 9

        *Burden of Proof* .......................................................................... 9

        *Presumption of Innocence* ......................................................... 9

        *Reasonable Doubt* .................................................................... 10

    C.      EVIDENCE ....................................................................................... 10

        *Types of Evidence* ..................................................................... 10

        *What is Not Evidence* ............................................................... 11

        *Direct and Circumstantial Evidence* ....................................... 12

        *Inferences* ................................................................................. 13

        *Objections* ................................................................................ 13

        *Transcripts of Recordings* ........................................................ 14

        *Charts and Summaries* ............................................................. 14

        *Redacted Documents* ................................................................ 15

        *All Available Evidence and Witnesses Do Not Need To Be Produced* .......................... 15

        *Uncharged Acts* ........................................................................ 16

        *Consider Each Count and Defendant Separately* ...................... 17

        *No Particular Proof Required* ................................................... 18

    D.      WITNESSES ...................................................................................... 19

        *Witness Credibility* ................................................................... 19

        *Discrepancies in Testimony / Prior Inconsistent Statements* ......................... 21

        *Number of Witnesses and Uncontradicted Testimony* ............... 22

*Uncalled Witnesses Equally Available* ............................................................ 22

*Other Persons Not on Trial* ............................................................................. 23

*Identification Testimony* .................................................................................. 23

*Interviewing Witnesses* .................................................................................... 24

*Cooperating Witnesses Called by the Government* ......................................... 24

*Expert Witnesses* ............................................................................................. 26

*The Defendants' Right Not to Testify [IF APPLICABLE]* ............................ 27

*Testimony of Defendants [IF APPLICABLE]* ................................................. 27

II.          **THE LEGAL ELEMENTS OF THE CRIMES CHARGED** .................. 27

A.     THE INDICTMENT .................................................................................... 27

B.     VENUE   .................................................................................................. 28

C.     DATES APPROXIMATE ........................................................................... 30

D.     KNOWLEDGE, INTENT, AND WILLFULNESS................................... 30

E.     CONSPIRACY ........................................................................................... 31

F.     AIDING AND ABETTING........................................................................ 35

G.     COUNT ONE: RACKETEERING............................................................ 38

H.     CHARGED RACKETEERING ACTS ..................................................... 48

I.     RACKETEERING ACTS ONE, SIX(A), AND ELEVEN: ACTS INVOLVING NARCOTICS TRAFFICKING ..................................... 49

J.     RACKETEERING ACTS TWO AND SIX(B): MONEY LAUNDERING CONSPIRACY ..................................................... 54

K.     RACKETEERING ACTS THREE, FOUR, FIVE, SEVEN, AND EIGHT: ACTS INVOLVING MURDER IN VIOLATION OF THE NEW YORK PENAL LAW .............................................................................. 58

L.     RACKETEERING ACTS NINE AND TEN: BRIBERY IN VIOLATION OF THE NEW YORK PENAL LAW .................................................... 69

M.     RACKETEERING ACTS TWELVE AND THIRTEEN: ROBBERY IN VIOLATION OF THE NEW YORK PENAL LAW .............................. 71

N.     COUNTS TWO, THIRTEEN, FOURTEEN, SIXTEEN, SEVENTEEN, TWENTY-TWO, TWENTY-THREE, TWENTY-FOUR, AND TWENTY-FIVE: NARCOTICS-RELATED OFFENSES................................... 74

O.     COUNTS FOUR AND FIFTEEN: MONEY LAUNDERING OFFENSES............. 80

P.     COUNTS FIVE, SIX, SEVEN, AND ELEVEN: VIOLENT CRIMES IN-AID-OF RACKETEERING .................................................................................. 82

Q.     COUNTS THREE, EIGHT, NINE, TWELVE, EIGHTEEN, TWENTY, AND TWENTY-SEVEN: UNLAWFUL POSSESSION, BRANDISHING,

AND DISCHARGE OF A FIREARM ..................................................... 89

R.    COUNTS TEN, NINETEEN, AND TWENTY-ONE: CAUSING DEATH
      THROUGH USE OF A FIREARM........................................................... 97

S.    COUNTS TWENTY-SIX AND TWENTY-EIGHT: FELON IN POSESSION OF A
      FIREARM........................................................................................ 99

III.      **GENERAL REMARKS DURING DELIBERATIONS**......................... 101

A.    DUTY TO CONSULT & NEED FOR UNANIMITY ............................................ 101

B.    COMMUNICATIONS WITH THE LAWYERS AND THE COURT ................... 102

C.    RIGHT TO SEE EXHIBITS AND HEAR TESTIMONY ...................................... 103

D.    FINAL COMMENTS ............................................................................. 104

**COGAN**, District Judge.

Ladies and gentlemen of the jury, now that the evidence in this case has been presented, it is my responsibility to instruct you as to the law that governs this case.  You will be given a copy of these instructions to take into the jury room with you, so it is not necessary to take notes, although you may if you would like to.  My instructions will be in three parts:

**FIRST**: I will instruct you regarding the general rules that define and govern the duties of a jury in a criminal case.

**SECOND**: I will instruct you as to the legal elements of the crimes charged in the Indictment, that is, the specific elements that the government must prove beyond a reasonable doubt to warrant a finding of guilt.

**THIRD**: I will give you some important principles that you will use during your deliberations.

## I.    GENERAL RULES

### A.    PARTIES TO THE JUDICIAL PROCESS AND JUROR DUTIES

***Juror Attentiveness***

You are about to enter your final duty, which is to decide the fact issues in this case.  You must pay close attention to me now.  It has been obvious to me and to counsel that you have faithfully discharged your duty to listen carefully and observe each witness who testified.  I would like to express my gratitude to you, and to the attorneys for their conscientious efforts on behalf of their clients.

I ask that you now give me that same careful attention that you gave at trial as I instruct you on the law.

***Role of the Court***

My responsibility at this point is to instruct you on the law.  It is your duty to accept these instructions and apply them to the facts as you determine them.  You should not single out any instruction as alone stating the law.  You must consider my instructions as a whole when you go to deliberate in the jury room.

On these legal matters, you must take the law as I give it to you, regardless of any opinion that you may have as to what the law may be – or should be.  It would violate your sworn duty to base a verdict on any other view of the law than the one that I give you.  If any attorney has stated a legal principle different from any that I state to you in these instructions, it is my instructions that you must follow.

***Duty of the Jury***

As members of the jury, you are the sole and exclusive judges of the facts.  You determine the credibility of the witnesses and resolve any conflicts that there may be in the

testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

### *Juror Oath*

In carrying out your duty, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely based on the evidence in the case and the applicable law.  I know that you will do this and reach a just and true verdict.

### *Jury to Disregard the Court's View*

As I mentioned at the outset of this case, I have no opinion as to the verdict you should render.  If any expression of mine, or any question or ruling I made, has seemed to indicate any opinion about this case, I instruct you to disregard it.  Similarly, you should not concern yourselves with, or speculate about, the contents of any discussion between counsel and me at sidebar.

### *All Persons Equal Under the Law*

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States.  The fact that the government is a party and the prosecution is brought in the name of the United States does not entitle the government or its witnesses to any greater or lesser consideration than that accorded to the defendants *or any witnesses that they have called [IF APPLICABLE]*.  The parties, the United States Government and the defendants, are equal before this Court, and are entitled to equal consideration.

### *Improper Considerations*

Your verdict must be based solely on the evidence or lack of evidence developed at this trial.  You are not to be swayed by sympathy for any of the parties, or what the reaction of the

7

parties or of the public to your verdict may be.  It would be equally improper for you to allow

any feelings you might have about the nature of the crimes charged against the defendants to

influence you in any way.  You should not consider any personal feelings you may have about

the race, religion, national origin, sex, or age of one of the parties or anyone participating in the

trial.  Your verdict will be determined by the conclusion you reach, no matter whom the verdict

helps or hurts.

It is for you alone to decide whether the government has proven that the defendants are

guilty of the crimes charged solely on the basis of the evidence and under the law as I instruct

you.  It must be clear to you that, once you let fear or prejudice or bias or sympathy interfere

with your thinking, there is a risk that you will not arrive at a true and just verdict.

You also must not bear any prejudice against any attorney or their client because that

attorney objected to the admissibility of evidence, asked for a sidebar out of your hearing, or

asked me for a ruling on the law.  If you formed reactions of any kind to the lawyers in the case,

favorable or unfavorable, whether you approved or disapproved of their behavior as advocates,

those reactions should not enter into your deliberations.  The personalities and conduct of

counsel in the courtroom are not in any way in issue.

Additionally, you heard a significant amount of language you may have found offensive

and expletives throughout the trial.  That language should not in any way affect your view of the

evidence, nor should it influence your consideration of any of the parties in this case.

### *Punishment Should Not be Considered*

The question of possible punishment of the defendant is of no concern to the jury and

should not, in any sense, enter into or influence your deliberations.  The duty of imposing a

sentence, should a conviction ensue, rests exclusively upon the court.  Your function is to weigh

the evidence in the case and to determine whether or not the defendants are guilty beyond a

reasonable doubt, solely upon the basis of such evidence.

### B. BURDEN OF PROOF & PRESUMPTION OF INNOCENCE

#### *Burden of Proof*

We now turn to the burden of proof that you must use to judge the defendants.  The

defendants have pleaded "not guilty" to the Indictment, and as a result, the burden is on the

prosecution to prove guilt beyond a reasonable doubt.  This burden never shifts to the defendants

for the simple reason that the law never imposes on a defendant in a criminal case the burden or

duty of calling any witness or producing any evidence or even cross-examining witnesses.

#### *Presumption of Innocence*

The law presumes the defendants are innocent of the charges against them.  I therefore

instruct you that you must presume the defendants to be innocent throughout your deliberations

until such time, if ever, you as a jury, are satisfied that the government has proven the defendants

guilty beyond a reasonable doubt.

This presumption of innocence alone is sufficient to acquit the defendants unless you as

jurors are unanimously convinced beyond a reasonable doubt of the defendants' guilt, after a

careful and impartial consideration of all the evidence in this case.  This presumption was with

the defendants when the trial began, it remains with the defendants even now as I speak to you,

and it will continue with the defendants into your deliberations, unless and until you are

convinced that the government has proven the guilt of each defendant beyond a reasonable

doubt.  If the government fails to sustain its burden as to any defendant, on any count, you must

find him not guilty.

***Reasonable Doubt***

You have now heard me say more than a few times that the government must prove the defendants guilty beyond a reasonable doubt. The question naturally is, "What is a reasonable doubt?" The words almost define themselves. It is a doubt based on reason and common sense. It is a doubt that a reasonable person has after carefully weighing all of the evidence. It is a doubt that would cause a reasonable person to hesitate to act in a matter of importance in their own personal life. A reasonable doubt can arise from the evidence, or from the lack of evidence. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act on it in the most important of their own personal affairs. A reasonable doubt is not an impulse or whim; it is not a speculation or suspicion. It is not an excuse to avoid the performance of an unpleasant duty. And it is not sympathy.

In a criminal case, at all times, the burden is on the government to prove guilt beyond a reasonable doubt. The law does not require that the government prove guilt beyond all possible doubt; proof beyond a reasonable doubt is sufficient to convict. But it is the government's burden to prove each of the elements of the crimes charged beyond a reasonable doubt. If after fair and impartial consideration of all the evidence you have a reasonable doubt, it is your duty to acquit the defendants. On the other hand, if after fair and impartial consideration of all of the evidence, you are satisfied of the defendants' guilt beyond a reasonable doubt, you should vote to convict.

C.     **EVIDENCE**

***Types of Evidence***

In determining the facts, it is your own recollection of the evidence that controls. The

evidence on which you are to decide the facts has come in three forms:

First, the sworn testimony of witnesses, both on direct and cross-examination.

Second, the exhibits that I have received in evidence.  You may only consider those exhibits that I have admitted into evidence.

And third, the stipulations between the parties.  As I told you during the trial, a "stipulation" is an agreement between the parties that certain facts are true, and you must regard such agreed-on facts as true.

### *What is Not Evidence*

Now, let me remind you that certain things are not evidence ~~and are to be disregarded by you in deciding what the facts are~~.

[Defendant objects to this latter portion of the sentence as unnecessary and inaccurate. Even though things such as the arguments of counsel are not evidence, they should not be "disregarded" by the jury in deciding facts.]

Arguments, questions, objections, or statements by the lawyers are not evidence. Anything I may have said or done is not evidence.  Anything you may have seen or heard outside the courtroom is not evidence.  The Indictment itself is not evidence; it merely describes the charges made against defendants and may not be considered by you as any evidence of their guilt.  Furthermore, when I sustained an objection or ordered that an answer be stricken, you must disregard that answer in its entirety.

Remember that if you elected to take notes during the trial, your notes should be used only as memory aids.  You should not give your notes greater weight than your independent recollection of the evidence.

11

**_Direct and Circumstantial Evidence_**

There are two types of evidence that you may properly use in deciding whether the defendants are guilty or not guilty.

One type of evidence is called direct evidence.  Direct evidence is where a witness testifies to what is known by virtue of the witness's senses – what the witness saw, heard, or observed.

The other type of evidence, circumstantial evidence, is evidence that tends to prove a fact by proof of other facts.  Here is a simple example of circumstantial evidence:  Sitting here, you do not know whether it is raining outside right now.  You cannot see outside, so you have no direct evidence of whether it is raining.  But imagine if someone walked in with an umbrella and a raincoat that are dripping wet.  Based on that evidence, it would be reasonable and logical for you to conclude that it had been raining.

~~Further, it is entirely permissible for y~~You may ~~to~~ likewise conclude that a fact or set of circumstances exists based on an absence of evidence.  If multiple people entered the courthouse without a wet raincoat or umbrella, you could reasonably conclude that it was not raining.

That's all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from an established fact, such as the wet raincoat and the dripping umbrella, or the lack of an established fact, such as the lack of a wet raincoat and dripping umbrella, the existence or nonexistence of some other fact – whether it is raining outside or not.

The law makes no distinction between direct and circumstantial evidence; rather, it simply requires that before convicting the defendants, you must be satisfied of the defendants' guilt beyond a reasonable doubt based on all the evidence in the case.

12

## *Inferences*

You have heard me use the term "inference," and in the lawyers' arguments, they may have asked you to infer on the basis of your reason, experience, and common sense, the existence of one fact from another.  It is for you, and you alone, to decide what inferences you will draw.

An inference is not a suspicion or a guess.  It is a reasoned, logical decision to conclude that a fact exists on the basis of another fact that you know exists.  It is a deduction or conclusion that you are permitted, but not required, to draw from the facts that have been proved by direct or circumstantial evidence.  You are not to engage in speculation based on matters that are not in evidence.

Let me remind you that, whether based on direct or circumstantial evidence or upon the logical, reasonable inferences that you draw from such evidence, you must be satisfied that the government has proved the guilt of each defendant beyond a reasonable doubt before you may vote to convict that defendant.

## *Objections*

Testimony and exhibits can be admitted into evidence only if they meet certain criteria or standards.  It is the duty of the attorney on each side of a case to object when the other side offers testimony or an exhibit which that attorney believes is not properly admissible under the rules of law.  Only by raising an objection can a lawyer request and then obtain a ruling from the Court on the admissibility of the evidence being offered by either side.  You should not be influenced against an attorney or their client because an attorney has made an objection.

Do not attempt to interpret my rulings on objections as somehow indicating how I think you should decide this case.  I am simply making a ruling on a legal question regarding that particular piece of testimony or exhibit.

## *Transcripts of Recordings*

Throughout the trial, you have heard various recordings that have been received into evidence.  The recordings are ~~proper~~ evidence and you may consider them just as any other evidence.  During the trial ~~Y~~you ~~will be~~ were given a transcript to use as a guide to help you follow as you listen to the recording.  Those transcripts, however, are ~~is~~ not evidence and thus will not be provided during deliberations.  The recordings themselves, you will recall, where supplemented by written words on the screen attempting to reflect the words that were being spoken on the recording.  Those writings, like the written transcripts that were provided to you during the trial, are also not evidence of what was actually said or who said it.  It is up to you to decide whether those writing ~~transcript~~ correctly reflect~~s~~ what was said and who said it.  If you notice any difference between what you heard on the recording and what you read on the screen, ~~in the transcript~~, you must rely on what you heard, not what you read.  And if after careful listening, you cannot hear or understand certain parts of the recording, you must ignore the writings~~transcript~~ as far as those parts are concerned.

## *Charts and Summaries*

The Government has presented exhibits in the form of charts and summaries.  Those exhibits summarize underlying evidence and are presented in summary form to save time.  It is your duty to determine ~~that~~ if these exhibits accurately reflect the underlying evidence that they summarize.  If you make that determination, then you should treat these charts and summaries as you would treat any other piece of evidence.

In particular, I remind you that the government exhibits that includes claims about attribution – for example, who certain phones belonged to – reflect the government's opinions and are not established facts.  As I previously instructed you, it is your job as the jury to decide

whether the information in the summary charts, including and especially the attribution column, accurately reflects the evidence on which the chart is based.  That means looking at the other exhibits that are referenced in the chart and deciding for yourself whether ~~you think the government's ultimate opinion on whom the phones belonged to was right or wrong~~ the phone numbers in question should be attributed to any particular individuals~~.~~

[The ~~d~~Defendants maintain their previously raised objection~~s~~ to the referenced charts and summaries and ~~maintains~~ that a limiting instruction is not sufficient to address the objection. The defendants propose different wording because the issue isn't simply whether the government's conclusion is right or wrong but whether those conclusions, or any conclusions about attribution, can be made with the level of reliability and certainty that is required to make factual findings on matters of such central importance in this case.]

### *Redacted Documents*

Some of the exhibits contain redacted information.  You are not to speculate as to what information might be, or might not be, in the redacted portion of any exhibit.  You are not to draw any inference, favorable or unfavorable, towards the government or the defendants from the fact that certain information is redacted from an exhibit.

### *All Available Evidence and Witnesses Do Not Need To Be Produced*

The law does not require the government to produce all available evidence or to call as witnesses all persons involved in the case who may have been present at any time or place, or who may appear to have some knowledge of the matters at issue at this trial.  Similarly, the law does not require any party to produce as exhibits all papers and objects mentioned during the course of the trial.  Your concern is to determine, based upon ~~all~~ the evidence presented in the case – and the lack of evidence -- ~~,~~ whether or not the government has proven that the defendants

are guilty beyond a reasonable doubt.

[Defendant objects to this instruction because it improperly dilutes the government's burden of proof, is prejudicial, and is unnecessary and confusing.]

### ***Uncharged Acts***

You have also heard evidence that the defendants engaged in conduct other than the crimes charged in the Indictment.  The defendants are not on trial for committing any acts not charged in the Indictment.  Consequently, you may not consider evidence of those other acts as a substitute for proof that the defendants committed the crimes charged in this case.  Nor may you consider evidence of those other acts as proof that the defendants have a criminal propensity; that is, you may not conclude that they likely committed the crimes charged in the Indictment because they were predisposed to engage in criminal conduct.  Instead, you may consider evidence of uncharged conduct by the defendants for limited purposes, and you may consider it only for those limited purposes, which I will now describe.

You may only consider evidence of uncharged conduct:

a. As evidence of the defendants' motive in carrying out the charged crimes;

b. As evidence of the defendants' knowledge and intent in carrying out the charged crimes;

c. As evidence of the development of relationships of mutual trust between the defendants and others with whom they are charged with carrying out the charged crimes;

d. As evidence of conduct that is inextricably intertwined with evidence of the charged crimes;

e.       As evidence enabling you to understand the complete story of the charged crimes; and

f.       As evidence corroborating the testimony of other Government witnesses.

Evidence of uncharged conduct by the defendants may not be considered by you for any purpose other than the ones I have just listed.

[Defendant objects to this instruction because it is vague and confusing. If there is evidence that was admitted for a limited purpose, the court needs to explain that limited purpose to the jury. It is not sufficient to repeat boilerplate from Rule 404(b), particularly because that boilerplate may not apply to certain pieces of evidence and may incorrectly permit the jury to consider evidence for purposes other than the specific purpose for which it was admitted.]

### *Consider Each Count and Defendant Separately*

The Indictment names four defendants who are on trial together.  In reaching your verdict, however, you must consider each defendant separately.  Your verdict as to each defendant must be determined separately with respect to him, solely on the evidence, or lack of evidence, presented against him, without regard to the guilt or innocence of the other defendants on trial or anyone else.

It is your duty to give separate and personal consideration to the case against each defendant.  When you do so, you should analyze what the evidence in the case shows with respect to that defendant, leaving out of consideration entirely any evidence admitted solely against the other defendant.

The fact that you return a verdict of guilty or not guilty to one defendant should not, in any way, affect your verdict regarding the other defendants.

In this regard, you may have noticed during the trial that the lawyers for the defendants have at times consulted with each other and may have divided some of the work of the trial in an effort to avoid duplicating each other.  The fact that lawyers for each defendant have consulted and cooperated with each other during the trial should not be considered by you as having any significance to any issues in this case.

Similarly, you are to consider each count in the indictment separately.  You must consider each count of the Indictment and each defendant's involvement in that count separately, and you must return a separate verdict on each defendant for each count with which he is charged.

### *No Particular Proof Required*

Although the government bears the burden of proof beyond a reasonable doubt, and although a reasonable doubt can arise from lack of evidence, there is no legal requirement that the government use any specific investigative technique to prove its case.  Law enforcement techniques are not your concern. Your concern is to determine whether or not, based on all of the evidence in this case, the government has proven that the defendant is guilty beyond a reasonable doubt as to each count charged against him.

[Defendant maintains his prior objection to this charge, and notes as well that the defendants did not make arguments at trial suggesting that the government was required to use any specific investigative techniques. Including this instruction in such circumstances serves no function but to gratuitously assist the prosecution.]

You have seen and heard evidence in the form of recordings that were obtained without knowledge of some or all of the parties to those conversations.  You have also seen and heard evidence obtained pursuant to investigative stops and court-authorized search warrants.  All this

18

evidence was obtained lawfully.  The use of these procedures to gather evidence is lawful, and the government has the right to use that evidence in this case.

### D.   **WITNESSES**

#### *Witness Credibility*

You have had an opportunity to observe all of the witnesses.  It is now your job to decide how believable each witness was in their testimony.  As jurors, you are the sole judges of the credibility of each witness and of the importance of their testimony.

As I am sure it is clear to you by now, you are being called on to resolve factual discrepancies.  You will have to decide where the truth lies, and an important part of that decision will involve making judgments about the testimony of the witnesses you have listened to and observed.  In making those judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony.  Your decision whether or not to believe a witness may depend on how the witness impressed you.  Was the witness candid and frank?  Or did it seem as if the witness was hiding something, being evasive, or suspect in some way?  How did the way the witness testified on direct examination compare with the responses on cross examination?  Was the witness's testimony consistent or inconsistent?  Did it appear that the witness knew what the witness was talking about?  Did the witness strike you as someone who was trying to report the witness's knowledge accurately?

How much you choose to believe a witness may also be influenced by the witness's bias or interest in the outcome of the case.  Does the witness have a relationship with the government or the defendants that may affect how the witness testified?  Does the witness have some

incentive, loyalty, or motive that might cause the witness to shade the truth?  Or does the witness have some bias, prejudice, or hostility that may have caused the witness, consciously or not, to give you something other than a completely accurate account of the facts?  Evidence that a witness may be biased towards one of the parties requires you to view that witness's testimony with caution, to weigh it with great care, and to subject it to close scrutiny.

This is not to suggest that every witness who has an interest in the outcome of the case will testify falsely.  Nor should you accept the testimony of a witness merely because of such disinterest.  It is for you to decide to what extent, if at all, the witness's interest or disinterest has affected or colored the witness's testimony.

Even if you think a particular witness was not biased, you should consider whether the witness had an opportunity to observe the facts that the witness testified about, as well as the witness's ability to communicate effectively.  Ask yourselves whether a witness's recollection of the facts stands up in light of all of the other evidence.

These instructions apply equally to law enforcement witnesses and laypersons.  The fact that a witness is a member of law enforcement does not mean that their testimony is entitled to any greater or lesser weight by reason of their employment.  You should consider the testimony of members of law enforcement just as you would consider any other testimony in the case and evaluate its credibility just as you would that of any other witness.

[Defendant requests the following addition: You should also know that it is legitimate for defense counsel to try to attack the credibility of law enforcement or other government witness testimony on the grounds that the testimony may be colored by a personal or professional interest in the outcome of the case. It is your decision, after reviewing all the evidence, whether to accept the testimony of a law enforcement witness or other witness and to give that testimony whatever

weight, if any, you think it deserves. *See* L. Sand, et al., *Model Jury Instructions* ("Sand"), Instruction 7-16.]

What you must try to do in deciding credibility is to size a person up in light of that person's demeanor, the explanations given, and all of the other evidence in the case, just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and has an accurate recollection. You should be guided by your common sense, your good judgment, and your experience.

### <u>*Discrepancies in Testimony / Prior Inconsistent Statements*</u>

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel has argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

Evidence of discrepancies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies in a witness's testimony or between his testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited. Two or more persons witnessing an incident or transaction may see or hear it differently, and innocent mis-recollection, like failure of recollection, is not uncommon. In weighing the effect of a discrepancy, consider whether it pertains to a matter of importance or to an unimportant detail, and whether it results from innocent error on one hand, or intentional falsehood on the other. The testimony of a witness may be discredited or impeached by showing that the witness previously made statements which are inconsistent with the witness's present testimony. It is your job to determine the weight, if any, to be given to all or part of the testimony of a witness who has been impeached by prior inconsistent statements.

If you find that a witness made such an inconsistent statement, you may consider that fact

in your assessment of the witness's credibility.  In other words, you may consider whether or not you believe the witness or accept their testimony in light of the prior inconsistent statement. ~~People sometimes forget things, and even a truthful witness may be nervous and contradict themselves.~~ [This is repetitive of earlier instructions and the Court should not make arguments on behalf of witnesses who may have contradicted themselves.]

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in their testimony.  You should, as always, use common sense and your own good judgment.

### <u>*Number of Witnesses and Uncontradicted Testimony*</u>

The fact that one party called more witnesses and introduced more evidence than another party does not mean that you should find the facts in favor of the side offering more witnesses. By that same token, you do not have to accept the testimony of any witness, even if that witness has not been contradicted or impeached, if you find the witness not to be credible.  You do have to decide which witnesses to believe and which facts are true.  To do this, you must look at all of the evidence, drawing on your own common sense and personal experience.

### <u>*Uncalled Witnesses Equally Available*</u>

Although the burden of proof rests exclusively with the government, each party had an equal opportunity or lack of opportunity to call as witnesses any of the individuals who were mentioned during the trial.  You should, however, remember, as I've told you, that the law does not impose on a defendant the burden or duty of calling any witnesses or producing any evidence.

[Defendant objects to this instruction as inaccurate, unnecessry, and improper. Many witnesses are not equally available to the government and defense for several reasons, including

22

that the government has the power to immunize witnesses and that certain witnesses decline to speak with the defense. *See, e.g.*, *United States v. Caccia*, 122 F.3d 136, 139 (2d Cir. 1997) (recognizing that government informant who expressed unwillingness to speak with defense counsel before trial was not equally available). In addition, if a witness is in fact equally available to both sides (as this instruction asserts) then, under Second Circuit law, a charge or comment on that fact is "inappropriate." *See id.*]

### *Other Persons Not on Trial*

You have heard evidence about the involvement of certain people in the offenses referred to in the Indictment who are not on trial.  You may not draw any inference, favorable or unfavorable, towards the government or the defendants from the fact that certain persons are not on trial before you.  You should not speculate as to the reason these people are not on trial before you, nor should you allow their absence as parties to influence in any way your deliberations in this case.  Your concern is solely the defendants on trial before you.

### *Identification Testimony*

You have heard testimony that purports to identify certain individuals.  Identification testimony is an expression of belief on the part of the witness.  Its value depends on the opportunity the witness had to observe the offender at the time of the offense and, later, to make a reliable identification of the offender.

You have heard the arguments of counsel on this subject, and I will not repeat them all here.  I will only suggest to you that you should consider the following matters: Did the witness have the ability to see the offender at the time of the offense?  Has the witness' identification been influenced in any way?  Has his identification been unfairly suggested by events that occurred since the time of the offense?  Is his recollection accurate?

In addition, you should consider the credibility of the identification witness just as you would any other witness.

### *Interviewing Witnesses*

There was testimony at trial that the attorneys for the government interviewed witnesses when preparing for and during the course of the trial. You should not draw any unfavorable inference from that testimony. To the contrary, the attorneys were obliged to prepare this case as thoroughly as possible and might have been derelict in the performance of their duties if they failed to interview witnesses before trial began and as necessary throughout the course of trial.

[Defendant objects to this instruction and requests the following instruction: "There was testimony at trial that the attorneys for the government interviewed witnesses when preparing for and during the course of the trial. You may consider that fact when you are evaluating a witness's credibility. But also note that there is nothing unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects about which he or she will be questioned. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony, and what inferences you draw from such preparation, are for you to decide."]

### *Cooperating Witnesses Called by the Government*

You have heard testimony of cooperating witnesses who have pleaded guilty to certain crimes. You are to draw no inference or conclusions of any kind about the guilt of the defendants currently on trial from the fact that the cooperating witnesses have pled guilty to similar or related charges. The witnesses' decisions to plead guilty were personal to each of their own actions and their decisions may not be used as evidence against the defendants here.

~~You heard that, under their plea agreements, these witnesses have been promised that if~~

~~they provide substantial assistance to the government and testify truthfully, completely, and~~

~~fully, the government will present to the sentencing court what is called a 5K1.1 letter, or a "5K~~

~~letter." The 5K letter sets forth the cooperating witness's criminal acts as well as the substantial~~

~~assistance the witness has provided. The government is permitted to enter into such agreements~~

~~with witnesses.~~

~~I instruct you that the 5K letter does not guarantee the cooperating witness a lower~~

~~sentence. This is because the sentencing court may, but is not required to, take the 5K letter into~~

~~account when imposing a sentence on the cooperating witness. The final determination as to the~~

~~sentence to be imposed rests with the court, not with the government. Ultimately, you should~~

~~look at all the evidence in deciding what credence and what weight you give to the cooperating~~

~~witnesses.~~

The testimony of cooperating witnesses should be scrutinized with great care and viewed

with particular caution when you decide how much of that testimony to believe. I have given

you some general considerations on credibility and I will not repeat them all here.

You should ask yourselves whether these witnesses <u>believed they</u> would benefit more by

lying or by telling the truth. Was their testimony ~~made up in any way~~ <u>colored</u> because they

believed or hoped that they would somehow receive favorable treatment by <u>helping the</u>

<u>government, even if that entailed</u> testifying falsely? Or did they believe that their interests would

be best served by testifying truthfully<u>, regardless of whether it was helpful to the governement's</u>

<u>case</u>? If you believe that a cooperating witness was motivated by hopes of personal gain, was the

motivation one that would cause him to lie, or was it one that would cause him to tell the truth?

Did this motivation color ~~his~~ <u>her</u> testimony? In sum, you should look at all the evidence in

deciding what credence and what weight, if any, you will want to give to the testimony of these

cooperating witnesses.

[Defendant objects to the highlighted portions of this instruction. It is improper and prejudicial for the Court to give this sort of instruction regarding cooperation. Individual cooperating witnesses may testify as to their understanding of what their cooperation agreement with the government means, and that is relevant because it may bear on their credibility. The Court or prosecutor's understanding of a cooperation agreement is not relevant, and of no assistance to the jury in assessing the crucial issue of how the witness understood the agreement. Specifically, if a cooperating witness testified that they believed their cooperation agreement increased their chances of receiving a lower sentence, or otherwise affected their case (which is also far more in keeping with reality than the technically correct notion that the Court is not required to consider a 5K letter) , this is relevant to their credibility and it is improper for the Court to ~~try and~~ refute or negate that testimony through an instruction.]

### *Expert Witnesses*

You have heard witnesses testify as experts about matters that are at issue in this case.  A witness may be permitted to testify to an opinion on those matters where he has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, the witness's opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony and what weight, if any, you find the testimony deserves.  You should not accept opinion testimony merely because I allowed the witness to testify concerning his opinion.  Nor should you substitute it for

your own reason, judgment, and common sense.  The determination of the facts rests with you.

### *The Defendants' Right Not to Testify [IF APPLICABLE]*

The defendants did not testify in this case.  Under our Constitution, they have no obligation to testify or to present any other evidence, because it is the government's burden to prove their guilt beyond a reasonable doubt.  You may not attach any significance to the fact that the defendants did not testify.  Nor may you draw any adverse inference against the defendants because they did not take the witness stand.  In your deliberations in the jury room, you may not consider this decision against the defendants in any way.

### *Testimony of Defendants [IF APPLICABLE]*

The defendants in a criminal case never have any duty to testify or come forward with any evidence.  This is because the burden of proof beyond a reasonable doubt remains on the government at all times, and the defendant is presumed innocent.  However, if a defendant chooses to testify, he is, of course, permitted to take the witness stand on his own behalf.  In this case, [DEFENDANT(S)] did testify and he/they was/were subject to cross-examination like any other witness.

## II.   THE LEGAL ELEMENTS OF THE CRIMES CHARGED

### A.   THE INDICTMENT

I will next instruct you as to the legal elements of the criminal counts the government has alleged.  The defendants are formally charged in an indictment.  As I instructed you at the outset of this case, an indictment is a charge or accusation, but it's not evidence of a crime.

The Indictment alleges that defendants were members or associates of the Bully Gang.  The Indictment contains 28 separate counts, and you must render a separate verdict on each of them.  This includes a racketeering count and related racketeering acts, as well as counts relating

to narcotics trafficking, bribery, money laundering, extortion, assault, murder, and firearms

offenses.  Later, I will describe each of these counts and their legal elements in detail; I've

provided this summary simply to give you an overview of the government's allegations. You

should not speculate as to why some defendants are or are not charged in certain counts of the

Indictment.

### B.    VENUE

Venue refers to the location of the charged crimes.  The Government must show that the

crimes charged occurred, at least in part, in this judicial district, the Eastern District of New

York.  This district encompasses the boroughs of Brooklyn, Queens, and Staten Island, as well as

Nassau and Suffolk Counties on Long Island, and the air space above the district or the waters in

the district.

To show that venue is appropriate in this district, the government must prove that some

act in furtherance of the crime occurred in this district.  A defendant need not personally have

been present in the district for venue to be proper.  Venue is proper in a district where the

defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur

or where it is foreseeable that such an act would occur in the district.

Venue can be conferred based on physical presence or conduct, and passing through a

district, including through or over waters, is sufficient to confer venue.  Venue can also be based

on electronic impulses, including email communications and electronic transfers of funds such as

banking transfers.  Venue lies in any district where electronic communications are sent or

received.

Furthermore, certain counts in the Indictment charge conspiracy.  In a conspiracy, actions

of co-conspirators, as well as actions caused by co-conspirators, may be sufficient to confer

28

venue if it was reasonably foreseeable to the defendant that the acts would occur in the Eastern District of New York.

Venue need only be proved by the lesser standard of "preponderance of the evidence." To prove something by a preponderance of the evidence means simply to prove that the fact is more likely true than not true. I emphasize that this lesser standard applies only where I specifically mention it in this charge – the rest of your decisions are governed by the "beyond a reasonable doubt" standard, which I already explained.  If you find that the government has failed to prove by a preponderance of the evidence that any act in furtherance of the count you are considering occurred within this district, you must find the defendants charged in that count not guilty of the crimes alleged in that count.

[Defendant objects to this proposed venue charge for the reasons stated in his prior submission. First, the Court should instruct the jury that venue must be proven beyond a reasonable doubt, or, if the Court rejects that request, it should decline to describe the preponderance standard and simply not state a separate burden of proof for venue. *See* Sand Instr. 3-11; *United States v. Potamitis*, 739 F.2d 784, 791-92 (2d Cir. 1984).

Second, this instruction is legally inaccurate with respect to several counts, which have different/ specific venue requirements. Defendant requests the Court instruct the jury on the correct legal requirements for venue as to each count.

For § 924(c) and § 924(j) violations, to establish venue, the government must prove that the defendant used or carried a firearm, or committed the charged crime of violence or predicate drug offense, in the Eastern District of New York. *See United States v. Rodriguez-Moreno*, 526 U.S. 275, 278, (1999); *United States v. Magassouba*, 619 F.3d 202, 206 (2d Cir. 2010).

To prove venue for a RICO violation, the government must prove that a defendant

committed a predicate racketeering act in the district, or participated in the operation and management of the RICO enterprise in the district. *See United States v. Royer*, 549 F.3d 886, 894-95 (2d Cir. 2008); *see also generally United States v. Tzolov*, 642 F.3d 314, 319 (2d Cir. 2011).

To prove venue for a violation of § 922(g)(1), the government must prove that the defendant possessed the relevant firearm in this district. *See, e.g.*, *United States v. DeJesus*, 2017 WL 3738783 (S.D.N.Y. 2017).

And to prove venue for a violation of § 856, the defendant maintains that the government must prove the alleged drug "stash" house was located in this district.]

### C.   DATES APPROXIMATE

The Indictment charges "in or about" and "on or about" and "between" certain dates. The proof need not establish with certainty the exact date of an alleged offense.  It is sufficient if the evidence establishes beyond a reasonable doubt that an offense was committed on a date reasonably near the dates alleged.

### D.   KNOWLEDGE, INTENT, AND WILLFULNESS

Because the Indictment charges 28 separate counts, and because all of the charges implicate the concepts of knowledge, intent and willfulness, I will tell you up front about those concepts before addressing the charges specifically.  A person acts "knowingly" when he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. Whether a defendant acted knowingly may be proven by his conduct and by all of the facts and circumstances surrounding the case.  A person acts "intentionally" when he acts deliberately and purposefully. That is, a defendant's acts must have been the product of his conscious, objective decision rather than the product of a mistake or accident.  "Willfully" means to act with

knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose to disobey or to disregard the law.  The defendant's conduct was not "willful" if it was due to negligence, inadvertence, or mistake.

The question of whether a person acted knowingly, intentionally, or willfully is a question of fact for you to determine, like any other fact question.  This question involves one's state of mind.  Direct proof of state of mind is rarely available.  The ultimate facts of criminal intent, although subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.

### E.    CONSPIRACY

The Indictment alleges that the defendants, in separate counts and acts, conspired to violate several different federal and state laws.  First, I will instruct you on the elements of conspiracy under federal law, and then instruct you on the elements of conspiracy under New York state law.  Later I will give you instructions on the federal and state laws the Indictment charges that the defendant conspired to violate.

Generally

A conspiracy is an agreement by two or more persons to accomplish some unlawful purpose.  A conspiracy is sometimes referred to as a criminal partnership.  The crime of conspiracy is an offense separate from the crime the alleged conspirators intended to commit.  A conspiracy is in and of itself a crime, even if it fails to achieve its purpose.

Federal Law

The Indictment charges the defendants with various conspiracies under federal law in a

number of racketeering acts and substantive counts.  Under federal law, the elements of the

crime of conspiracy are:

> First:     two or more persons entered into the particular
>            unlawful agreement charged in the conspiracy count
>            that you are considering; and
>
> Second:    the defendant knowingly and intentionally became a
>            member of the conspiracy.

First, as to the existence of a charged conspiracy, the government must prove that two or

more persons entered into the unlawful agreement that is charged in the count or racketeering act

that you're considering.  One person cannot commit the crime of conspiracy alone.  Rather, the

evidence must convince you that at least two people joined together in a common criminal

scheme.  The Government does not have to prove an express or formal agreement when it seeks

to prove a conspiracy.  It need not prove that the conspirators stated in words or in writing what

the scheme was, its object or purpose, or the means by which it was to be accomplished.  It's

sufficient if the evidence establishes that the conspirators came to an unspoken understanding to

accomplish an unlawful act by means of a joint plan or a common design.

You may find that the existence of an agreement to disobey or disregard the law has been

established by direct proof.  But since conspiracy is generally, by its very nature, characterized

by secrecy, you may also infer its existence from the circumstances of this case and the conduct

of the parties involved.

The second element requires that the government prove that the defendant you are

considering was a member of that conspiracy.  That is, you must determine whether he

knowingly and intentionally became a participant in the conspiracy.  I have already instructed

you as to the terms "knowingly" and "intentionally."  Proof of a financial interest in the outcome

of a scheme is not essential, although if you find that a defendant did have a financial interest in the outcome of a scheme, you may consider that as evidence of a defendant's motive to join the conspiracy.

To become a member of the conspiracy, a defendant need not have known the identities of every member, nor need he have been apprised of all their activities. A defendant need not have been fully informed of all the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part.

The law does not require a defendant to play an equal role in the conspiracy as another defendant or conspirator. Some conspirators may play major roles, while others may play minor ones. Each member may perform separate and distinct acts and may perform them at different times. Even a single act may be sufficient to draw a defendant within the circle of a conspiracy. A person who intentionally joins an existing conspiracy is charged with the same responsibility as if he had been one of the originators or instigators of the conspiracy with respect to alleged crimes that occurred while he was a member of the conspiracy.

Keep in mind, though, that a defendant's mere presence at the scene of criminal activities, or at locations frequented by criminals, does not, by itself, make him a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make a defendant a member. A person may know or be friendly with a criminal without being a criminal himself. Mere similarity of conduct or the fact that individuals may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.

I further caution you that mere knowledge or acquiescence without participation in the unlawful plan is not sufficient. The fact that the acts of a defendant merely happen to further the

purposes or objectives of the conspiracy, without his knowledge, does not make that defendant a member.  More is required under the law.  What is necessary is that a defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

New York State Law

The Government has also charged conspiracy under New York State law for four of the racketeering acts.  New York Penal Law Section 105.15 provides that "[a] person is guilty of conspiracy in the second degree when, with intent that conduct constituting a class A felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct."  I instruct you that the object of all four charged state-law conspiracies is a class A felony.

The New York State definition of conspiracy is essentially the same as the federal definition, except that New York State law additionally requires an overt act.  The federal-law conspiracies charged in this case do not require an overt act.

What is an overt act?  It is any step, action, or conduct that is taken to achieve or further the objective of the conspiracy.  The overt act itself does not have to be criminal, and it does not need to be the crime that is the purpose of the conspiracy.  An overt act is one that is committed or caused to be committed by any member of the conspiracy—even a member who is not charged as a defendant — in an effort to accomplish some objective or purpose of the conspiracy.

One overt act is enough to prove the third element of conspiracy under New York State law.  ~~It is not necessary that each member of the conspiracy committed or participated in that overt act.  Rather, in the eyes of the law, the act of one member of a conspiracy becomes the act~~

34

~~of all members of the conspiracy.  Thus,~~ The proof of an overt act by only one of the conspirators to accomplish one of the conspiracy's objectives is sufficient, as long as you all agree on that one overt act.  You must all agree that the same overt act was committed.

Co-Conspirator Statements and Criminal Liability

~~The charges against the defendants allege that they participated in conspiracies.  In that regard, I admitted into evidence against each defendant certain acts and statements made by others because these acts and statements were committed by persons who, the government charges, are co-conspirators of the defendants on trial.  The reasonably foreseeable acts and statements of any member of the conspiracy, if they are in furtherance of the common purpose of the conspiracy, are deemed to be the acts of all the members of the conspiracy, and all the members are responsible for such acts and statements.~~

~~However, before you may consider the statements or acts of a co-conspirator in deciding the issue of a defendant's guilt, you must first determine that the acts and statements were made during the existence of, and in furtherance of, the unlawful scheme.  If the acts were done or statements were made by someone whom you do not find to have been a member of the conspiracy, or if they were not done or said in furtherance of the conspiracy, they may not be considered by you as evidence against a defendant.~~

[Defendant maintains his objection to this charge.]

**F.     AIDING AND ABETTING**

The Indictment includes several racketeering acts and counts charging defendants with aiding and abetting the commission of crimes.  I will now instruct you on aiding and abetting under federal and New York State law.

Aiding and Abetting Under Federal Law

The federal aiding-and-abetting statute provides as follows:

> Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

It is not necessary for the government to prove that a defendant himself physically committed the act or crime in order to find that defendant guilty. If you find that a defendant knowingly and intentionally helped another person in the commission of the crime, the defendant is as guilty as if he personally committed it.

Before you can convict the defendant on a ground that he aided and abetted the commission of the crimes charged, you must first find that another person committed that crime. No one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other person in the first place. But if you do find that a crime was committed, then you must determine whether the defendant in question aided or abetted the commission of that crime. That is, did the defendant do some act with the intent to have the crime succeed?

For a defendant to be guilty of aiding and abetting, it is necessary that there be more than knowledge that a crime is being committed. The mere presence of a defendant at or near where a crime is being planned or committed, even coupled with knowledge by the defendant that a crime is being planned or committed, is not sufficient to establish aiding and abetting. Not even acquiescence in the crime itself is enough. A defendant must have willfully associated himself in some way with the criminal venture as something he wanted to bring about. That is, a defendant must willfully seek by some act to make the criminal venture succeed. I previously instructed you on what "willfully" means.

36

Aiding and Abetting Under New York Law

The relevant New York State statute, New York Penal Law Section 20.00, says the following:

> When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.

Under New York State law, just like with federal law, a defendant charged with aiding and abetting a crime may be liable for the crime, even if he did not commit that crime.

In order for the defendant to be held criminally liable for the criminal conduct of another under New York State law, you have to find the following elements:

First:    the defendant, solicited, requested, commanded, importuned, or intentionally aided that person or persons to engage in that conduct; and

Second:    the defendant did so with the state of mind that would be required for the commission of that crime.

In short, if you are satisfied beyond a reasonable doubt that a defendant aided, abetted, counseled, commanded, induced, or procured the commission of a crime by somebody else, then you should find that the defendant guilty of that crime, or – in the case of a racketeering act – that the particular racketeering act is proven.  On the other hand, if the government has not satisfied you beyond a reasonable doubt that the defendant aided or abetted the commission of that crime, then you must find him not guilty of the crime charged or, in the case of a racketeering act, that the act is not proven.

Just as with conspiracies, if the government has proven that a defendant is criminally liable for the conduct of another, the extent or degree of the defendant's participation in the

37

crime itself does not matter.  The defendant is just as guilty of that offense as if he committed it himself.

[Defendant maintains his objection to a general aiding and abetting instruction not linked to a particular offense. For specific counts where the government proceeds on an aiding and abetting theory, the Court should give more specific instructions as to what is required to show the aiding and abetting of that particular crime. To the extent the Court denies this objection and gives a general aiding and abetting instruction, defendants request the charge previously proposed by the defense. *See United States v. Huezo*, 546 F.3d 174, 179-80 (stating the requirements for aiding and abetting liability).]

### G.    COUNT ONE: RACKETEERING

Count One of the Indictment charges defendants MOELEEK HARRELL, DERRICK AYERS, FRANKLIN GILLESPIE, and ANTHONY KENNEDY with racketeering.  It involves the Racketeer Influenced and Corrupt Organizations Act, also known as the RICO statute.  The word racketeering has certain implications in our society.  Use of that term in the statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of a defendant has been proven.  The term is only a word used by Congress to describe the statute.

Count One provides as follows:

> In or about and between January 2016 and February 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL, also known as "Moelek" and "Moe Money," DERRICK AYERS, also known as "Dee" and "Mel," FRANKLIN GILLESPIE, also known as "Spazz" and "Frankie Gino," and ANTHONY KENNEDY, also known as "Biggie," together with

others, being persons employed by and associated with the Bully
Gang, an enterprise that engaged in, and the activities of which
affected, interstate and foreign commerce, did knowingly and
intentionally conduct and participate, directly and indirectly, in the
conduct of the affairs of the Enterprise through a pattern of
racketeering activity, as defined in [the United States Code] . . . .

I note that although the Indictment alleges that the defendants, "being persons employed

by and associated with the Bully Gang, an enterprise that engaged in, and the activities of which

affected, interstate and foreign commerce, did knowingly and intentionally conduct and

participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a

pattern of racketeering activity."  I instruct you that the word "and" really means "or" in this

context.  That is, the government must prove that the defendants, being persons employed by <u>or</u>

associated with an enterprise that engaged in, <u>or</u> the activities of which affected, interstate <u>or</u>

foreign commerce, did knowingly <u>or</u> intentionally conduct <u>or</u> participate, directly <u>or</u> indirectly, in

the conduct of the affairs of the enterprise through a pattern of racketeering activity.

There are several other instances like this in the Indictment.  Instead of pointing each

instance out to you, let me explain.  This is the result of how the government formalizes its

charges, and it is not a statement of the law.  As I instructed you earlier, the Indictment is not

evidence and it is entitled to no weight in your determination of the facts.  You are to apply the

law as I am instructing you now.  Where my instructions use the word "or," that "or" is

controlling over any other contradictory phrasing in the Indictment.

The relevant portion of the RICO statute provides that "[i]t shall be unlawful for any

person employed by or associated with any enterprise engaged in, or the activities of which

affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the

conduct of such enterprise's affairs through a pattern of racketeering activity."

39

To prove a defendant guilty of racketeering, the government must prove five elements beyond a reasonable doubt:

| | | |
|---|---|---|
| First: | an enterprise existed, as alleged in the Indictment; |
| Second: | the enterprise or its activities affected interstate or foreign commerce; |
| Third: | the defendant was associated with or employed by the enterprise; |
| Fourth: | the defendant engaged in a pattern of racketeering activity; and |
| ~~Fifth:~~ | ~~the defendant conducted or participated in the conduct of the enterprise through the pattern of racketeering activity.~~ |

Enterprise

The first element of the crime of racketeering is that an enterprise existed, as alleged in the Indictment.  The term "enterprise" includes any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect interstate or foreign commerce.  Thus, the word "enterprise" may include a group of people associated in fact, even though their association does not constitute a legal entity.

The enterprise does not need to have any particular name, or, for that matter, any name at all.  An enterprise need not be a formal entity, but may be merely an informal association of individuals.  A group or association of people can be an enterprise if these individuals have associated together for a common purpose of engaging in a course of conduct.  Such an association of persons may be established by evidence showing an ongoing organization, formal or informal, and by evidence that the people making up the association function as a continuing unit.

40

Therefore, to establish the existence of such an enterprise, the government must prove the following beyond a reasonable doubt:

> First: there is an ongoing organization with some sort of framework for making or carrying out decision; and
>
> Second: the various members and associates of the organization function as a continuing unit to achieve a common purpose.

If you find that the enterprise existed, you must also determine whether this enterprise continued in an essentially unchanged form during substantially the entire period charged in the Indictment. Continuing membership exists even where the membership changes by adding or losing individuals over the course of its existence, as long as it persists in substantially similar form over time. Regarding the term "organization," it is not necessary that the enterprise have any particular or formal structure, but it must have sufficient organization that its members function and operate it in a coordinated manner to carry out the common purpose or purposes of the enterprise.

The existence of an enterprise is an element separate and apart from the pattern of racketeering acts charged. But evidence of those racketeering acts may also be sufficient to establish the existence of the enterprise.

Now, this enterprise must be the one charged in the Indictment, but the government is not required to prove each and every allegation about the enterprise or about the manner in which the enterprise operated. As I have explained, the introduction to the Indictment refers to the enterprise as the Bully Gang. There is no requirement that the government prove that all members of the enterprise refer to themselves or to the enterprise by any particular name.

I have already described the enterprise's criminal activities, as alleged in the Indictment's

introduction.  I will now turn to the purposes, methods, and means of the enterprise.  The purposes of the enterprise the government alleged here included the following:

(a)     preserving and protecting the power, territory and criminal ventures of the enterprise through the use of intimidation, threats of violence and acts of violence, including murder, robbery, arson, assault and extortion;

(b)     promoting and enhancing the prestige, reputation and position of the enterprise with respect to rival criminal organizations;

(c)     keeping victims and rivals in fear of the enterprise and its members and associates through acts of violence and threats of violence;

(d)     providing assistance to members and associates who committed crimes for and on behalf of the enterprise;

(e)     enriching the members and associates of the Enterprise through criminal activity, including drug trafficking, firearms trafficking, robbery and extortion; and

(f)     concealing the activities of the enterprise from law enforcement.

The Indictment also alleges that among the means and methods by which defendants MOELEEK HARRELL, DERRICK AYERS, FRANKLIN GILLESPIE, and ANTHONY KENNEDY and their associates conducted and participated in the conduct of the affairs of the enterprise were the following:

(a)     members of the enterprise and their associates committed, conspired to commit, attempted to commit and threatened to commit acts of violence, including acts involving murder, robbery, arson, assault and extortion, to enhance the Enterprise's prestige and protect and expand the Enterprise's criminal operations;

(b)     members of the enterprise and their associates used, attempted to use and conspired to use drug trafficking, robbery and extortion as means of obtaining money;

(c)     members of the enterprise and their associates laundered the proceeds of their narcotics trafficking and re-invested the proceeds to promote additional criminal activities;

(d)     members of the enterprise and their associates bribed and conspired to bribe public officials including corrections officers to ensure their ability to continue distributing narcotics;

(e)     members of the enterprise and their associates used and threatened to use physical violence against various individuals; and

(f)     members of the enterprise and their associates obtained, possessed and used firearms.

The government is not required to prove each and every one of these particular allegations regarding the criminal activities, purposes, methods, and means of the enterprise.

If you find that this was a group of people characterized by an ongoing organization with some sort of framework for making or carrying out decisions, and that various members and associates of the organization functioned as a continuing unit to achieve a common purpose, then you may find that an enterprise existed.

Interstate or Foreign Commerce

The second element is that the enterprise affected interstate or foreign commerce. Interstate commerce means trading or conducting business or travel between one state and another state. Foreign commerce means such trade, business, or travel between the United States and another country. Interstate and foreign commerce may include the movement of money, goods, services, or persons from one state to another, or between a state and the District of Columbia, or between the United States and another country. The effect on interstate or foreign commerce need not be substantial or significant.

43

An enterprise is generally engaged in commerce when it is directly engaged in the production, distribution, or acquisition of goods or services in commerce, or when the crimes charged in the indictment had an effect on interstate or foreign commerce. Moreover, it is not necessary to find that the defendant knew that the enterprise would affect interstate or foreign commerce; that the defendant intended to affect interstate or foreign commerce; or even that the defendant engaged in, or the defendant's activities affected, interstate or foreign commerce.

Association with the Enterprise

The third element of racketeering is that the defendant was associated with or employed by the enterprise at some time during the period charged in the Indictment. The defendant need not have been associated with the enterprise for the entire period of its existence, but the defendant must have been associated with the enterprise at the time of the racketeering acts in which he is named. The government must prove beyond a reasonable doubt that the defendant was connected to the enterprise in some meaningful way and that the defendant knew of the existence of the enterprise and of the general nature of its activities.

The phrase "associated with" should be given its plain meaning. A defendant is associated with an enterprise when, for example, the defendant joins with other members of the enterprise and knowingly aids or furthers the activities of the enterprise, or conducts business with or through the enterprise.

The defendant's association with the enterprise must be "knowing." I have already instructed you with respect to knowledge. It is not required that the defendant had a formal position in the enterprise, participated in all the activities of the enterprise, had full knowledge of all the activities of the enterprise, or knew about the participation of all the other members of the enterprise. It is sufficient that the government prove beyond a reasonable doubt that, at some

point during the existence of the enterprise as alleged in the Indictment, the defendant was associated with the enterprise, that the defendant knew of the general nature of the enterprise, and that the enterprise extended beyond the defendant's own role in it.

<u>Engaging in a Pattern of Racketeering Activity</u>

The fourth element is that the defendant <u>personally</u> engaged in a pattern of racketeering activity. <u>In order to satisfy the pattern requirement of this charge, you must find four things: first, that the defendant committed two of the alleged racketeering acts; second, that those acts were related to the enterprise; third, that those acts were related to each other; and fourth, that those acts posed a threat of continuing criminal activity. I'll take each of these in turn.</u>

*First,* ~~T~~the government has charged 13 racketeering acts, some involving murder, robbery, bribery, money laundering, and narcotics trafficking.  For each defendant charged with racketeering, you must find that he committed at least 2 of those 13 acts within 10 years of each other to find him guilty of Count One.

You must unanimously agree on at least two of those racketeering acts.  In other words, it is not enough that you all believe that two racketeering acts were committed.  With respect to each defendant, you cannot find the defendant guilty if some of you think that the defendant committed only Racketeering Acts A and B and the rest of you think that the defendant committed only Racketeering Acts C and D.  <u>Any racketeering acts you do not unanimously find to have been committed by the defendant do not satisfy the pattern requirement, and thus cannot constitute part of the pattern required to convict.</u>  There must be at least two racketeering acts that all of you believe were committed by each defendant in order to convict that defendant.

*Second*, the pattern requirement prevents application of the Racketeer Influenced &

Corrupt Organizations statute to the perpetrators of isolated or sporadic criminal acts.[1] Therefore, in order to convict the defendant, you must find that the two racketeering acts were related to the enterprise.[2] If you find that the defendant committed a racketeering act, but that the act was not related to the enterprise, then that act does not satisfy the pattern requirement and thus cannot constitute part of the pattern required to convict. It's entirely possible that you could find on one hand that multiple racketeering acts are related to each other, but on the other hand that they are not related to the enterprise. That would not satisfy the pattern requirement and those acts cannot constitute part of the pattern required to convict.

The government must prove that the link between the racketeering acts and the alleged enterprise is a strong one: in order to find that the racketeering acts are related to the alleged enterprise, you must find that there is proof of a specified relationship between the racketeering acts and the alleged enterprise,[3] or that the defendant's commission of the racketeering acts was solely enabled by his position in the alleged enterprise, or involvement in or control over the affairs of the enterprise.[4]

*Third*, the pattern requirement also requires the government to prove that the racketeering acts are related to each other.  It is not sufficient for the government to prove only that the defendant committed two of the racketeering acts.  That's because a series of disconnected acts do not constitute a pattern, nor do they amount to or pose a threat of continued racketeering activity~~To prove that the acts constituted a pattern of racketeering activity, the government must prove that the racketeering acts are related to each other and that they pose a threat of continued~~

---

1 *See US v. Indelicato,* 865 F.~~3~~2d 1370, 1377 (2d Cir. 1989)
2 *See US v. Minicone,* 960 F.2d 1099, 1106 (2d Cir. 1992); US v. Long, 917 F.2d 691, 697 (2nd Cir. 1990)
3 *See US v. Persico,* 1994 US Dist. LEXIS 928 (EDNY 1994); US v. Indelicato, 865 F.2d 1370, 1384 (2d Cir. 1989)
4 *See US v. Minicone,* 960 F.2d 1099, 1106 (2d Cir. 1992)

46

criminal activity.  It is not sufficient for the government to prove only that the defendant committed two of the racketeering acts.  A series of disconnected acts does not constitute a pattern, nor do they amount to or pose a threat of continued racketeering activity.

To prove that the racketeering acts are related, the government must prove that the acts have the same or similar purposes, results, participants, victims, or methods of commission, or that the acts are otherwise interrelated by some distinguishing characteristics and are not isolated events.  Isolated events are not a pattern.

*Fourth*, the pattern requirement also requires the government to prove that the racketeering acts posed a threat of continued criminal activity. To prove that the racketeering acts pose a threat of continued criminal activity, the government must establish one of the following: that the acts are part of a long-term association that exists for criminal purposes; that the acts are a regular way of conducting the defendants' ongoing legitimate business; or that the acts are a regular way of conducting or participating in an ongoing and legitimate RICO enterprise.

Conducting or Participating in the Enterprise Through the Racketeering Pattern

The fifth element is conducting or participating in the enterprise through the pattern of racketeering activity.  That means that the defendant must have played some part in the operation or management of the enterprise.  The government does not have to prove that the defendant was a member of upper management of the enterprise.  An enterprise is operated not only by those in upper management, but also by those lower down in the enterprise who act under the direction of upper management.

In addition to proving that the defendant played some part in the operation or management of the enterprise, the government must prove that there is some meaningful

47

connection between the defendant's illegal acts and the affairs of the enterprise. The government must establish one of the following: that the defendant's position in the enterprise facilitated his or her commission of those illegal acts and the racketeering acts had some impact or effect on the enterprise; that the acts were in some way related to the affairs of the enterprise; or that the defendant was able to commit the acts by virtue of his or her position or involvement in the enterprise's affairs.

### H.   CHARGED RACKETEERING ACTS

Now I will instruct you as to the elements of each of the racketeering acts. To find defendants MOELEEK HARRELL, DERRICK AYERS, FRANKLIN GILLESPIE, and ANTHONY KENNEDY guilty of the racketeering offense charged in Count One, you must find that the government satisfied all the elements of the charge. Those are the five elements I just explained to you.

As I have already stated, there are 13 racketeering acts alleged in the Indictment. Some of the racketeering acts allege that the charged defendants committed more than one crime. If a particular racketeering act contains more than one charge, the government need prove only one of those charges beyond a reasonable doubt satisfy its burden of proof as to that particular racketeering act. Still, your verdict must be unanimous with respect to at least one of the charges contained in the racketeering act in order for you to find that the particular act is proven. Put another way, you must find that at least 2 of the 13 racketeering acts have been proven as to each charged defendant. Some of those racketeering acts are actually in two parts—that is, two separate crimes. You may find those racketeering acts proven based on both or just one of those parts, but, again, you all have to find the same one.

Nine of the racketeering acts are state—not federal—offenses. In order for a state

48

offense to be considered as a racketeering act, the government must prove beyond a reasonable doubt that the defendant committed the offense as defined by the applicable state law.  For the racketeering acts that are federal offenses, the government must similarly prove each of the elements of that offense beyond a reasonable doubt.

I have prepared a verdict sheet to assist you in your deliberations.  Each finding that you are required to make must be recorded on the verdict sheet.  If you find a charged defendant guilty of racketeering, you must reach, as to that defendant, separate verdicts of proven or not proven with regard to each of his alleged racketeering acts on the verdict sheet.

[Defendant objects to this racketeering charge and requests the previously proposed defense charge.]

## I.     RACKETEERING ACTS ONE, SIX(A), AND ELEVEN: ACTS INVOLVING NARCOTICS TRAFFICKING

I will first discuss the racketeering acts that allege narcotics trafficking.  As I have explained earlier, the government need only prove one of the two crimes charged in Racketeering Act Six—Racketeering Act Six(A) or (B)—although you may alternatively find that both crimes are proven.  I will describe the elements of Racketeering Act Six(B) later in my instructions.

Racketeering Act One reads as follows:

> In or about and between January 2016 and June 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL, DERRICK AYERS, FRANKLIN GILLESPIE and ANTHONY KENNEDY, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances, which offense involved (a) a substance

> containing cocaine, a Schedule II controlled substance, (b) a
> substance containing heroin, a Schedule I controlled substance, and
> (c) a substance containing N-Phenyl-N-[1-(2-phenylethyl)-4-
> piperidinyl] propanamide ("fentanyl"), a Schedule II controlled
> substance, contrary to Title 21, United States Code, Section
> 841(a)(1), in violation of Title 21, United States Code, Section
> 846.

Racketeering Act One further alleges that the amount of cocaine and heroin involved in the

conspiracy attributable to defendants HARRELL, AYERS, GILLESPIE, and KENNEDY, as a

result of their own conduct, and the conduct of other conspirators reasonably foreseeable to

them, was (i) five kilograms or more of a substance containing cocaine and (ii) one kilogram or

more of a substance containing heroin.

Racketeering Act Six(A) reads as follows:

> In or about and between June 2019 and February 2021, both dates
> being approximate and inclusive, within the Eastern District of
> New York and elsewhere, the defendants MOELEEK HARRELL
> and ANTHONY KENNEDY, together with others, did knowingly
> and intentionally conspire to distribute and possess with intent to
> distribute a controlled substance, which offense involved a
> substance containing cannabinoids and synthetic cannabinoids,
> Schedule I controlled substances, contrary to Title 21, United
> States Code, Section 841(a)(1), in violation of Title 21, United
> States Code, Section 846.

Racketeering Act Eleven reads as follows:

> In or about June 2020, the defendants DERRICK AYERS,
> FRANKLIN GILLESPIE and ANTHONY KENNEDY, together
> with others, did knowingly and intentionally possess with intent to
> distribute one or more controlled substances, which offense
> involved (a) a substance containing cocaine, a Schedule II
> controlled substance; and (b) a substance containing fentanyl, a
> Schedule II controlled substance, in violation of Title 21, United
> States Code, Section 841(a)(1).

I will start with the elements of the substantive narcotics offense and turn to the elements of the

narcotics conspiracy offense.

Elements of Narcotics Trafficking

It is unlawful for any person knowingly or intentionally "to . . . distribute, . . . or possess with intent to . . . distribute . . . , a controlled substance." I instruct you that heroin; certain cannabinoids called tetrahydrocannabinols; and certain synthetic cannabinoids called methyl 2-(1-(4-fluorobutyl)-1H-indazole-3-carboxamido)-3,3-dimethylbutanoate (also known as "4F-MDMB-BUTINACA") and methyl 2-(1-(5-fluoropentyl)-1H-indole-3-carboxamido)-3,3-dimethylbutanoate (also known as "5F-MDMB-PICA" or "5-Fluoro MDMB-Pica") are Schedule I controlled substances under federal law. I also instruct you that cocaine and fentanyl are Schedule II controlled substances under federal law.

The crime of narcotics possession with intent to distribute has three elements:

First:          the defendant possessed a controlled substance;

Second:     the defendant knew that he possessed a controlled substance; and

Third:        the defendant possessed the controlled substance with the intent to distribute it.

The crime of narcotics distribution has two elements:

First:          the defendant distributed a controlled substance; and

Second:     the defendant distributed the controlled substance knowingly.

I will explain these elements in more detail.

To prove that a defendant is guilty of possessing or distributing controlled substances, the government must first prove that the substances he is charged with possessing or distributing were in fact a controlled substance. The government must prove beyond a reasonable doubt that the defendant in fact distributed or possessed with intent to distribute – or, in the case of a

charged conspiracy, that the object of the defendant's conspiracy was to distribute or possess with intent to distribute – at least one of the specified controlled substances.  The government can, but need not, prove the distribution or possession of more than one controlled substance as to each charge.

As used here, "distribution" means the actual, constructive, or attempted transfer of a controlled substance.  "To distribute" simply means to deliver or to hand over something to another person, or to cause something to be delivered or handed to another person.  Distribution does not require a sale, but a sale is one of the ways that a controlled substance can be distributed.  Activities in furtherance of a sale, such as vouching for the quality of the drugs, negotiating for or receiving the price, and supplying or delivering the drugs, may constitute distribution.

"Possession" can be either actual or constructive.  Actual possession is what most of us think of as possession – that is, having physical custody or control of an object.  Constructive possession is the ability to exercise substantial control over an object that is not in a person's physical custody and the intent to exercise such control – for example, telling someone else what to do with an object of yours that you let them borrow.  More than one person can possess something at the same time, and possession may be sole or joint.  If you find that the defendant or a co-conspirator had such power and intention, then the defendant possessed the drugs even if he possessed the drugs jointly with another.

A defendant has "intent to distribute" a controlled substance if he has possession of a controlled substance, either actual or constructive, and intends to "distribute" it to one or more people.  I have already instructed you on the meaning of intent, and those instructions apply here. When you are determining whether the government has proved an intent to distribute, you should

consider whether the possession was for personal use or for the purpose of distribution to another.  As I explained, to distribute simply means to transfer or cause the transfer of the item to another person.

Although the government must prove that the defendant knew that he possessed narcotics, the government does not have to prove that the defendant knew the exact nature of the drugs in his possession.  It is enough that the government proves that the defendant knew that he possessed some kind of illegal drug and intended to distribute it.

[Defendant objects to this charge and requests the previously proposed defense charge regarding drug distribution and conspiracy. If the Court overrules that objection, he also makes specific objections to the portions highlighted above.]

Narcotics Trafficking Conspiracy

Title 21, United States Code, Section 846 makes it a separate crime for a defendant to conspire with others to violate the narcotics laws of the United States.  To be guilty of narcotics conspiracy, the government must prove:

First:     two or more persons entered into an agreement to
           distribute or possess with intent to distribute a
           controlled substance; and

Second:    the defendant knowingly and intentionally became a
           member of the conspiracy.

I have already explained the federal law of conspiracy and you should apply that law here.  You cannot find that the government has proven the conspiracy unless you are convinced, beyond a reasonable doubt, that a goal of the conspiracy was to distribute controlled substances or to possess controlled substances with the intent to distribute them.

If you determine that Racketeering Act One was proven beyond a reasonable doubt as to

53

a defendant, you must determine whether the government has established beyond a reasonable doubt that the conspiracy involved at least five kilograms or more of a substance containing cocaine or at least one kilogram or more of a substance containing heroin that is attributable to that defendant as a result of his own conduct or the conduct of other conspirators that he should have been able to foresee.  You will see those questions regarding drug amounts on the verdict sheet that I will give you.

## J. RACKETEERING ACTS TWO AND SIX(B): MONEY LAUNDERING CONSPIRACY

I will next discuss the racketeering acts regarding conspiracies to launder money.

Racketeering Act Two reads as follows:

> In or about and between January 2016 and June 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL, DERRICK AYERS and ANTHONY KENNEDY, together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate and foreign commerce, to wit: the transfer and delivery of United States currency, which transactions in fact involved the proceeds of specified unlawful activity, to wit: narcotics trafficking, in violation of Title 21, United States Code, Sections 841(a) and 846, knowing that the property to be involved in such transactions represented the proceeds of some form of unlawful activity and (a) with the intent to promote the carrying on of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i); (b) knowing that the financial transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and (c) to avoid one or more transaction reporting requirements under Federal law, to wit: Title 31, United States Code, Section 5313(a), contrary to Title 18, United States Code, Section 1956(a)(1)(B)(ii), in violation of Title 18, United States Code, Section 1956(h).

Racketeering Act Six(B) reads as follows:

> In or about and between June 2019 and June 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL and ANTHONY KENNEDY, together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate and foreign commerce, to wit: interstate and foreign transfers of funds, which transactions in fact involved the proceeds of specified unlawful activity, to wit: narcotics trafficking and narcotics trafficking conspiracy, in violation of Title 21, United States Code, Section 841(a) and 846, respectively, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), in violation of Title 18, United States Code, Section 1956(h).

My prior instructions with respect to the law of conspiracy apply here.  Title 18, United States Code, Section 1956(h) provides that "[a]ny person who conspires to commit any offenses defined in this section" shall be guilty of a crime.

Racketeering Act Two charges three objects of the criminal conspiracy: money laundering in violation of Section 1956(a)(1)(A)(i), (B)(i), and (B)(ii).  The government need only prove one object beyond a reasonable doubt, so long as you are unanimous as to which object has been proved.  Racketeering Act Six(B) also charges that the object of its conspiracy is money laundering in violation of Section 1596(a)(1)(A)(i).

Elements of Money Laundering

Each of the three substantive money laundering crimes has three elements.  The first two elements are the same for all three; all that differs is the third.  The first element is the defendant conducted a financial transaction involving property constituting the proceeds of specified unlawful activity, namely, narcotics trafficking and narcotics trafficking conspiracy.  The second element is the defendant knew that the property involved in the financial transaction was the

proceeds of some form of unlawful activity.  With respect to the second element, the government only has to prove that the defendant knew that the property represented the proceeds of some illegal activity that was a felony.  I instruct you that the drug trafficking offenses charged in the Indictment are all felonies under federal law.

For Section 1956(a)(1)(A)(i), the third element is that the defendant acted with the intent to promote the carrying on of specified unlawful activity:

For Section 1956(a)(1)(B)(i), the third element is that the defendant acted with the knowledge that the financial transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

And for Section 1956(a)(1)(B)(ii), the third element is that the defendant acted with the knowledge that the financial transaction was designed in whole or in part to avoid a transaction reporting requirement under federal law.  The federal law specified here requires that a financial institution file a report with the federal government any time that the institution is involved in a transaction involving $10,000 or more in United States currency.  This report is known as a currency transaction report, or CTR.

I am now going to give you some definitions.  The term "conducts" includes initiating, concluding, participating, and initiating or including a transaction.  A transaction includes a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition of property.  The term "financial transaction" means a transaction involving a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree, or a transaction that in any way or degree affects interstate or foreign commerce and involves the movement of funds by wire or other means, or involves one or more monetary instruments.

56

A transaction involving a financial institution includes a deposit, withdrawal, inter-account transfer, purchase or sale of any monetary instrument, or any other payment, transfer, or delivery by, through, or to a financial institution by any means.

The term "interstate or foreign commerce" means commerce between any combination of states, territories, or possessions of the United States or between the United States and a foreign country.

The term "monetary instrument" includes, among other things, coin or currency of the United States or any other country, personal checks, traveler's checks, cashier's checks, bank checks, money orders, investment securities, or negotiable instruments in bearer form, or otherwise in such form that the title passes upon delivery.

The term "proceeds" means any property derived from or obtained or retained directly or indirectly through some form of unlawful activity, including the gross receipts of such activity. Proceeds can be any kind of property, not just money.

Finally, the term "specified unlawful activity" means any one of a variety of offenses defined by the statute. In this case, the government has alleged that the funds in question were the proceeds of drug trafficking offenses. I instruct you that, as a matter of law, drug trafficking falls within that definition. But it is for you to determine whether the funds were the proceeds of that unlawful activity.

<u>Money Laundering Conspiracy</u>

To prove money laundering conspiracy, the government must establish the following elements beyond a reasonable doubt:

> <u>First:</u>      two or more persons entered into the particular unlawful agreement to commit the money laundering offense or offenses I just explained; and

57

> Second:    the conspirator knowingly and intentionally became
> a member of the conspiracy.

Again, I remind you that with respect to Racketeering Acts Two and Six(B), the government alleges only that the defendants conspired to commit the offense of money laundering.  The money laundering conspiracies are separate and distinct from the actual violation of any specific law, such as the law prohibiting money laundering as a substantive crime that I have already explained to you.  The government does not need to prove that money laundering was committed or even attempted for you to find that a money laundering conspiracy has been proven.

## K.    RACKETEERING ACTS THREE, FOUR, FIVE, SEVEN, AND EIGHT: ACTS INVOLVING MURDER IN VIOLATION OF THE NEW YORK PENAL LAW

I will now discuss the five racketeering acts involving murder.  Racketeering Acts Three to Five and Seven to Eight charge various acts involving murder in violation of the New York Penal Law.

Racketeering Act Three(A) reads as follows:

> In or about and between September 2017 and June 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL and DERRICK AYERS, together with others, did knowingly and intentionally conspire to cause the death of John Doe #1, . . . in violation of New York Penal Law Sections 125.25(1) and 105.15.

Racketeering Act Three(B) reads as follows:

> On or about June 27, 2018, within the Eastern District of New York and elsewhere, the defendant MOELEEK HARRELL,

together with others, with intent to cause the death of John Doe #1, did knowingly and intentionally attempt to cause the death of John Doe #1, in violation of New York Penal Law Sections 125.25(1), 110.00 and 20.00.

Racketeering Act Four reads as follows:

In or about and between September 2017 and October 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL and DERRICK AYERS, together with others, did knowingly and intentionally conspire to cause the death of John Doe #2, . . . in violation of New York Penal Law Sections 125.25(1) and 105.15.

Racketeering Act Five reads as follows:

On or about March 3, 2018, within the Eastern District of New York and elsewhere, the defendant DERRICK AYERS, together with others, with the intent to cause the death of Jonathan Jackson, did knowingly and intentionally cause his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

Racketeering Act Seven(A) reads as follows:

In or about April 2020, within the Eastern District of New York and elsewhere, the defendant FRANKLIN GILLESPIE, together with others, did knowingly and intentionally conspire to cause the death of Paul Hoilett, in violation of New York Penal Law Sections 125.25(1) and 105.15.

Racketeering Act Seven(B) reads as follows:

On or about April 11, 2020, within the Eastern District of New York and elsewhere, the defendant FRANKLIN GILLESPIE, together with others, with intent to cause the death of Paul Hoilett, did knowingly and intentionally cause the death of Paul Hoilett, in violation of New York Penal Law Sections 125.25(1) and 20.00.

Racketeering Act Eight(A) reads as follows:

In or about April 2020, within the Eastern District of New York and elsewhere, the defendants FRANKLIN GILLESPIE and ANTHONY KENNEDY, together with others, did knowingly and

intentionally conspire to cause the death of Mike Hawley, in violation of New York Penal Law Sections 125.25(1) and 105.15.

Racketeering Act Eight(B) reads as follows:

On or about April 15, 2020, within the Eastern District of New York and elsewhere, the defendants FRANKLIN GILLESPIE and ANTHONY KENNEDY, together with others, with intent to cause the death of Mike Hawley, did knowingly and intentionally cause the death of Mike Hawley, in violation of New York Penal Law Sections 125.25(1) and 20.00.

As I have explained earlier, the government need only prove one of the two crimes charged—(A) or (B)—in Racketeering Acts Three, Seven, and Eight, although you may alternatively find guilt as to both crimes.

Now before I charge you on the elements of Murder, I will instruct you on the defense of justification as it relates to Racketeering Act Five in which the Government has charged:

On or about March 3, 2018, within the Eastern District of New York and elsewhere, the defendant DERRICK AYERS, together with others, with the intent to cause the death of Jonathan Jackson, did knowingly and intentionally cause his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

With respect to Racketeering Act Five, Mr. Ayers has raised the defense of justification, also known as self-defense with respect to the shooting of Jonathan Jackson.

I will now explain our law's definition of the defense of justification as it applies to Racketeering Act Five.

With regard to Racketeering Act Five, Mr. Ayers is charged with Murder in the Second Degree as a violation of New York State law. For this reason, when you consider Racketeering Act Five, you must consider the elements of the New York State Law violation and the elements of justification under New York State Law.

I will first instruct you on the law of justification and I will then instruct you as to the elements of Murder in the Second Degree under Penal Law §125.25.5   Once justification is raised as it has here, it is the Government's burden to prove beyond a reasonable doubt that Mr. Ayers was not justified in the shooting of Jonathan Jackson. This is an additional element that the Government must prove.

Under New York State Law, a person may use deadly physical force upon another individual when, and to the extent that, he or she reasonably believes it to be necessary to defend himself or herself or someone else from what he or she reasonably believes to be the use or imminent use of unlawful deadly physical force by such individual.

Some of the terms used in this definition have their own special meaning in our law. I will now give you the meaning of the following terms: "deadly physical force" and "reasonably believes."

Deadly Physical Force means physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.6  Serious physical injury means impairment of a person's physical condition which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.7

The determination of whether a person reasonably believes deadly physical force to be necessary to defend himself/herself or someone else from what he/she reasonably believes to be

---

5 The charge has been reproduced from the text of Penal Law §35.15 with edits tailored to this case.
6 Penal Law 10.00(11).
7 Penal Law 10.00 (9) and (10).

the use or imminent use of deadly physical force by another individual requires the application of a two-part test.8  That test applies to this case in the following way:

First, the defendant must have actually believed that Jonathan Jackson and his accomplices were using or were about to use deadly physical force against him or her or someone else, and that the defendant's own use of deadly physical force was necessary to defend himself or herself or someone else from it; and

Second, a "reasonable person" in the defendant's position, knowing what the defendant knew and being in the same circumstances, would have had those same beliefs.

Thus, under our law of justification, it is not sufficient that the defendant honestly believed in his own mind that he was faced with defending himself/herself or someone else against the use or imminent use of deadly physical force. An honest belief, no matter how genuine or sincere, may yet be unreasonable.

To have been justified in the use of deadly physical force, the defendant must have honestly believed that it was necessary to defend himself or herself or someone else from what he or she honestly believed to be the use or imminent use of such force by Jonathan Jackson and his accomplices and that a "reasonable person" in the defendant's position, knowing what the defendant knew and being in the same circumstances, would have believed that too.

On the question of whether the defendant did reasonably believed that deadly physical force was necessary to defend himself or herself or someone else from what he or she reasonably believed to be the use or imminent use of such force by Jonathan Jackson and his accomplices it

---

8 *People v. Goetz*, 68 N.Y. 2d 96, 115 (1986).

does not matter that the defendant was or may have been mistaken in his or her belief; provided that such belief was both honestly held and reasonable.

Notwithstanding the rules I have just explained, the defendant would not be justified in using deadly physical force under the following circumstances:

(1)      The defendant would not be justified if he/she was the initial aggressor of deadly physical force;

"Initial aggressor" means the first person who uses, or threatens the imminent use of, deadly physical force.

The actual striking of the first blow or inflicting of the first wound, however, does not necessarily determine who was the initial aggressor.

A person who reasonably believes that another is about to use deadly physical force upon him need not wait until he or she is struck or wounded. He or she may, in such circumstances, be the first to use deadly physical force, so long as he or she reasonably believed it was about to be used against him or her. He or she is then not considered to be the "initial aggressor," even though he/she strikes the first blow or inflicts the first wound.

The Government in this case has conceded that Mr. Jackson and his accomplices were the initial aggressors in this encounter.

You have heard evidence that Mr. Ayers, although not the initial aggressor, intervened in the incident.

If a person intervenes in a conflict in defense of another, that person is an initial aggressor only if he or she somehow initiated or participated in the initiation of the original use of deadly physical force or the threat to use it, or reasonably should have known that the person

63

he or she was defending initiated it. On the other hand, if he or she neither initiated, nor participated in the initiation of deadly physical force, or the threat to use it, and had no reason to know who initiated it, then he or she is not the initial aggressor.9

(2)      The defendant would not be justified if he/she knew that he/she could with complete safety to himself or herself and others avoid the necessity of using deadly physical force by retreating.

It is thus an element of Racketeering Act Five, the allegation that Mr. Ayers caused the death of Jonathan Jackson, that the defendant was not justified. As a result, if you find that the Government has failed to prove beyond a reasonable doubt that the defendant was not justified, then you must find the defendant not guilty of Racketeering Act 5.

I remind you again that once the defense of justification is properly raised, and I instruct you that it has in this case, the Government is required to prove beyond a reasonable doubt that the defendant was not justified. The defense is not required to affirmatively present evidence or call any witnesses in order to establish the defense of justification.

I will now instruct you on the elements of Murder under New York State Law.

Elements of Murder

Under New York Penal Law Section 125.25(1), murder is defined in relevant part as follows:  "A person is guilty of murder in the second degree when, with intent to cause the death of another person, he causes the death of such person."  Thus, to prove the crime of murder, the government must prove two elements beyond a reasonable doubt:

First:   the defendant intended to cause the death of another person; and

---

9 People v Walker, 26 N.Y. 3d 170, 177 (2015) and endnote 1.

Second:          in accordance with that intent, the defendant caused the death of that person.

Third:  and that the defendant, in this case Derrick Ayers, was not justified in causing the death of Jonathan Jackson

With respect to the first element, the defendant intends to cause the death of another when that defendant's conscious objective or purposes is to cause the death of that person.  I have already instructed you on the meaning of intent, and those instructions apply here.

Under New York State's murder law, premeditation is not a prerequisite in determining intent.  Intent may be formed in a brief instant before the commission of the act.  But it is necessary for the intent to be formed prior to or during the commission of the act or acts resulting in the commission of a crime.

With respect to the second element, to prove that the defendant caused the victim's death, the government must prove that the defendant's conduct was a sufficiently direct cause of the death of the victim.  A defendant's conduct constitutes a sufficiently direct cause if (1) the defendant's actions were an actual contributory cause of the death, in the sense that those actions forged a link in the chain of causes which brought about the death, and (2) the fatal result was reasonably foreseeable.

With respect to Racketeering Act Five, as I have instructed you,  it is the Government's burden to prove, beyond a reasonable doubt that Mr. Ayers was not justified in the shooting of Jonathan Jackson.

I also instruct you that if you find that the Government has not proven Racketeering Act Five to indicate on the verdict sheet the basis for your finding. The verdict sheet provides the following additional findings:

Racketeering Act Five:          Murder – Jonathan Jackson

      As to defendant Derrick Ayers:

            Not Proved_____          Proved _____

If not proved:

          Justification _____

           Not in furtherance of Count One (Racketeering) _____

Elements of Murder

Under New York Penal Law Section 125.25(1), murder is defined in relevant part as follows:  "A person is guilty of murder in the second degree when, with intent to cause the death of another person, he causes the death of such person."  Thus, to prove the crime of murder, the government must prove two elements beyond a reasonable doubt:

    First:  the defendant intended to cause the death of another person; and

    Second:  in accordance with that intent, the defendant caused the death of that person.

With respect to the first element, the defendant intends to cause the death of another when that defendant's conscious objective or purposes is to cause the death of that person.  I have already instructed you on the meaning of intent, and those instructions apply here.

Under New York State's murder law, premeditation is not a prerequisite in determining intent.  Intent may be formed in a brief instant before the commission of the act.  But it is necessary for the intent to be formed prior to or during the commission of the act or acts resulting

in the commission of a crime.

With respect to the second element, to prove that the defendant caused the victim's death, the government must prove that the defendant's conduct was a sufficiently direct cause of the death of the victim.  A defendant's conduct constitutes a sufficiently direct cause if (1) the defendant's actions were an actual contributory cause of the death, in the sense that those actions forged a link in the chain of causes which brought about the death, and (2) the fatal result was reasonably foreseeable.

Racketeering Acts Five, Seven(B), and Eight(B) charge substantive murder, and they also charge murder under an aiding-and-abetting theory.  I have already instructed you on state-law aiding and abetting under New York Penal Law Section 20.00, and those instructions apply here.

Conspiracy to Commit Murder

As I have already explained to you, Racketeering Acts Three(A), Four, Seven(A), and Eight(A) charge murder conspiracy.  I have already instructed you on the elements of state-law conspiracy, and those instructions apply here.

One of the elements of state-law conspiracy is an overt act, which, to remind you, is a concrete step by somebody toward the object of the conspiracy.  The Government alleges certain overt acts for each Racketeering Act.

Racketeering Act Three(A) alleged the following three overt acts:

(a)     On or about September 30, 2017, AYERS sent a text message to HARRELL containing the license plate number of a vehicle used by John Doe #1.

(b)     On or about October 1, 2017, HARRELL sent a text message to AYERS containing a picture of a vehicle with a license plate matching the number AYERS had sent.

67

       (c)     On or about June 27, 2018, AYERS created a note in his cellular telephone reflecting the license plate number of a vehicle used by John Doe #1.

Racketeering Act Four alleged the following three overt acts:

       (a)     On or about September 18, 2017, AYERS sent a text message to HARRELL containing a hyperlink to the New York State criminal case look-up website.

       (b)     On or about September 19, 2017, HARRELL sent a text message to AYERS containing a photograph of John Doe #2 and others.

       (c)     On or about September 27, 2017, AYERS sent a text message to HARRELL containing a screen shot of a map depicting a location in Queens, New York.

Racketeering Act Seven(A) alleged the following three overt acts:

       (a)     On or about April 11, 2020, GILLESPIE sent text messages indicating that he wanted to "move" "before [it gets] too dark."

       (b)     On or about April 11, 2020, GILLESPIE traveled from New Jersey to Brooklyn, New York.

       (c)     On or about April 11, 2020, GILLESPIE shot Paul Hoilett in the back of the head.

Racketeering Act Eight(A) alleged the following four overt acts:

       (a)     On or about April 15, 2020, GILLESPIE called Mike Hawley's cellular telephone.

       (b)     On or about April 15, 2020, GILLESPIE and KENNEDY drove from New Jersey to Staten Island, New York, and then to Far Rockaway, New York.

       (c)     On or about April 15, 2020, GILLESPIE and KENNEDY changed the license plates on the vehicle used to drive to Far Rockaway, New York.

       (d)     On or about April 15, 2020, in Far Rockaway, New York, GILLESPIE shot Mike Hawley.

For each charged state-law conspiracy, the government need only prove one of the listed overt acts.  It is sufficient that only one co-conspirator perform that single act, provided that the act was taken toward the object of the conspiracy.

Attempted Murder

Under New York Penal Law 110.00, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."  I have already instructed you on the meaning of intent, and those instructions apply here.

The phrase "conduct which tends to effect the commission of a crime" means conduct which comes dangerously close or very near to the completion of the intended crime.  It does not matter that the intended crime was not actually completed.  The defendant's conduct must be directed toward the accomplishment of the intended crime.  It must go beyond planning and mere preparation, but it need not be the last act necessary to effect the actual commission of the intended crime.

Racketeering Act Three(B) charges substantive attempted murder, as well as attempted murder under an aiding-and-abetting theory.  I have already instructed you on state-law aiding and abetting, and those instructions apply here.

## L.    RACKETEERING ACTS NINE AND TEN: BRIBERY IN VIOLATION OF THE NEW YORK PENAL LAW

I will now discuss the racketeering acts involving bribery.

Racketeering Act Nine reads as follows:

> In or about and between April 2020 and May 2020, both dates
> being approximate and inclusive, within the Eastern District of

69

New York and elsewhere, the defendants MOELEEK HARRELL
and ANTHONY KENNEDY, together with others, did knowingly
and intentionally confer, and offer and agree to confer, one or more
benefits upon a public servant upon an agreement and
understanding that such public servant's judgment, action, decision
and exercise of discretion as a public servant would thereby be
influenced, in violation of New York Penal Law Section 200.00.

Racketeering Act Ten reads as follows:

In or about May 2020, within the Eastern District of New York and
elsewhere, the defendant MOELEEK HARRELL, together with
others, did knowingly and intentionally confer, and offer and agree
to confer, one or more benefits upon a public servant upon an
agreement and understanding that such public servant's judgment,
action, decision and exercise of discretion as a public servant
would thereby be influenced, in violation of New York Penal Law
Section 200.00.

To prove bribery, the government must prove beyond a reasonable doubt the following

three elements:

| First: | the defendant conferred – or offered or agreed to confer – a benefit upon a beneficiary; and |
| Second: | the beneficiary was a public servant; and |
| Third: | the defendant did so upon an agreement or understanding that the beneficiary's vote, opinion, judgment, action, decision, or exercise of discretion as a public servant would thereby be influenced. |

I will define a number of terms.  "Benefit" means any gain or advantage to the

beneficiary and includes any gain or advantage to a third person pursuant to the desire or consent

of the beneficiary.

"Public servant" means any public officer or employee of the state or of any political

subdivision thereof or of any governmental instrumentality within the state, or any person

exercising the functions of any such public officer or employee.

70

"Agreement" means a mutual agreement between a public servant and a person who confers, or offers or agrees to confer, any benefit upon such public servant that such public servant's vote, opinion, judgment, action, decision, or exercise of discretion as a public servant will thereby be influenced.

"Understanding" means a belief by the defendant that a public servant's vote, opinion, judgment, action, decision, or exercise of discretion as a public servant will thereby be influenced by the conferring of, the offering of, or the agreeing to confer any benefit upon that public servant.

The bribery statute requires either a mutual agreement between the bribe maker and the public servant, or a unilateral understanding in the mind of the bribe maker.  If a benefit is offered or conferred with only the hope that the public servant will be influenced thereby, then this crime is not committed.  A mere hope does not suffice.  In addition, it is no defense to this charge that the public servant did not have power or authority to perform the act or omission for which the alleged bribe, gratuity, or reward was given.

## M.   RACKETEERING ACTS TWELVE AND THIRTEEN: ROBBERY IN VIOLATION OF THE NEW YORK PENAL LAW

The final two Racketeering Acts—Racketeering Acts Twelve and Thirteen—charge robbery in violation of the New York Penal Law.

Racketeering Act Twelve reads as follows:

> On or about August 24, 2020, within the Southern District of New York and elsewhere, the defendant FRANKLIN GILLESPIE, together with others, did knowingly and intentionally forcibly steal property by robbery, to wit: jewelry, electronics, United States currency and personal effects from John Doe #3, John Doe #4 and John Doe #5, . . . while aided by one or more persons actually present, and, in the course of the commission of the crime and of

immediate flight therefrom, displayed what appeared to be a firearm, in violation of New York Penal Law Sections 160.10(1), 160.10(2) and 20.00.

Racketeering Act Thirteen reads as follows:

On or about August 25, 2020, within the Southern District of New York and elsewhere, the defendant FRANKLIN GILLESPIE, together with others, did knowingly and intentionally forcibly steal property by robbery, to wit: clothing, accessories and United States currency from John Doe #6, John Doe #7 and John Doe #8, . . . while aided by one or more persons actually present, and, in the course of the commission of the crime and of immediate flight therefrom, displayed what appeared to be a firearm, in violation of New York Penal Law Sections 160.10(1), 160.10(2) and 20.00.

The government need only prove at least one of the two substantive crimes charged: Section 160.10(1) or (2).

Both robbery crimes have two elements. The first element is the same for both crimes: the defendant forcibly stole property.

The second element for robbery in violation of Section 160.10(1) is the defendant was aided in doing so by another person who was actually present. The second element for robbery in violation of Section 160.10(2) is that in the course of the commission of the crime or of immediate flight therefrom, the defendant or another participant in the crime displayed what appeared to be a pistol, revolver, rifle, shotgun, machine gun, or other firearm.

The term "forcible stealing" has its own special meaning. I will take it in parts. The term "stealing" is also called "larceny" under state law. A defendant steals property and commits a larceny when, with the intent to deprive another of property or to appropriate the property to himself or to a third person, the defendant wrongfully takes, obtains, or withholds property from the owner of the property. "Property" means any money, personal property, or things of value. An "owner" means a person having a right to possession to the property superior to that of the

72

person who takes it.

I have already instructed you on the meaning of intent, and those instructions apply here. A defendant acts with the "intent to deprive another of property or to appropriate property to himself or to a third person" when the defendant's intent is (1) to withhold the property or cause it to be withheld permanently; (2) to exercise control over the property or aid a third person to exercise control over it; or (3) to dispose of the property either for the benefit of himself or a third person, or under such circumstances as to render it unlikely that an owner will recover such property.

A defendant takes, obtains, or withholds property "wrongfully" when the defendant does so without the owner's consent, and when the defendant exercises dominion and control over that property for a period of time – however temporary – in a manner wholly inconsistent with the owner's rights.

Now, a defendant "forcibly" steals property and thus commits robbery when, in the course of committing the larceny, he uses or threatens the immediate use of physical force upon another person with the intent of (1) compelling the owner of such property, or another person, to give up the property; (2) preventing or overcoming resistance to the taking of the property; (3) preventing or overcoming resistance to the retention of the property, immediately after the taking; or (4) compelling the owner of such property to engage in other conduct which aids in the commission of the larceny.

With respect to Section 160.10(1), a person is "actually present" when such person is in a position to render immediate assistance to a person participating in the robbery and is ready, willing, and able to do so.

With respect to Section 160.10(2), the government need not prove that the object

displayed was actually a firearm.  The government need only prove that the defendant or other participant consciously displayed, or manifested the presence of, something that could reasonably be perceived as a pistol, revolver, rifle, shotgun, machine gun, or other firearm, and that the person to whom the item was displayed or manifested, perceived it as a pistol, revolver, rifle, shotgun, machine gun, or other firearm.

Racketeering Acts Twelve and Thirteen charge substantive robbery, as well as robbery under an aiding-and-abetting theory.  I have already instructed you on state-law aiding and abetting under New York Penal Law Section 20.00, and those instructions apply here.

N.    **COUNTS TWO, THIRTEEN, FOURTEEN, SIXTEEN, SEVENTEEN, TWENTY-TWO, TWENTY-THREE, TWENTY-FOUR, AND TWENTY-FIVE: NARCOTICS-RELATED OFFENSES**

Counts Two, Thirteen to Fourteen, Sixteen to Seventeen, and Twenty-Two to Twenty-Five charge various defendants with narcotics-related offenses.  I will first discuss the counts related to narcotics trafficking.  I will then discuss the counts related to drug-involved premises, which the Indictment refers to as "stash houses."

Narcotics Trafficking

Count Two provides as follows:

> In or about and between January 2016 and June 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL, also known as "Moelek" and "Moe Money," DERRICK AYERS, also known as "Dee" and "Mel," FRANKLIN GILLESPIE, also known as "Spazz" and "Frankie Gino," and ANTHONY KENNEDY, also known as "Biggie," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances, which offense involved (a) a substance containing cocaine, a Schedule II controlled substance; (b) a substance containing heroin, a Schedule

I controlled substance; and (c) a substance containing fentanyl, a
Schedule II controlled substance, contrary to Title 21, United
States Code, Section 841(a)(1).

Count Two further alleges that the amount of cocaine and heroin involved in the conspiracy

attributable to defendants HARRELL, AYERS, GILLESPIE, and KENNEDY, as a result of their

own conduct, and the conduct of other conspirators reasonably foreseeable to them, was (i) five

kilograms or more of a substance containing cocaine and (ii) one kilogram or more of a

substance containing heroin.

Count Fourteen provides as follows:

In or about and between June 2019 and February 2021, both dates
being approximate and inclusive, within the Eastern District of
New York and elsewhere, the defendants MOELEEK HARRELL,
also known as "Moelek" and "Moe Money," and ANTHONY
KENNEDY, also known as "Biggie," together with others, did
knowingly and intentionally conspire to distribute and possess with
intent to distribute one or more controlled substances, which
offense involved substances containing synthetic cannabinoids and
cannabinoids, Schedule I controlled substances, contrary to Title
21, United States Code, Section 841(a)(1).

I have already instructed you with respect to the law of conspiracy.  Those same

instructions apply here.  With respect to Counts Two and Fourteen, the government alleges that

the objects of the defendants' conspiracies are to distribute narcotics and to possess narcotics

with intent to distribute.  I have already instructed you on the substantive crimes of narcotics

distribution and narcotics possession with intent to distribute and your role in determining

particular drug amounts.  Those instructions also apply here.

Drug-Involved Premises

Count Thirteen provides as follows:

In or about and between July 2019 and June 2020, both dates being
approximate and inclusive, within the District of Maine and

75

elsewhere, the defendant DERRICK AYERS, also known as "Dee" and "Mel," together with others, did knowingly and intentionally (a) lease, rent, use and maintain a place, to wit: 2 Woodpecker Drive, Troy, Maine (the "Troy Stash House"), for the purpose of manufacturing, distributing and using one or more controlled substances, and (b) manage and control the Troy Stash House as a lessee, agent and occupant and make the Troy Stash House available for use for the purpose of unlawfully manufacturing, storing, distributing and using one or more controlled substances, which offense involved (i) a substance containing cocaine base, a Schedule II controlled substance, and (ii) a substance containing heroin, a Schedule I controlled substance.

Count Sixteen provides as follows:

In or about November 2019, within the District of Maine and elsewhere, the defendant DERRICK AYERS, also known as "Dee" and "Mel," together with others, did knowingly and intentionally (a) lease, rent, use and maintain a place, to wit: 7 Center Road, Searsport, Maine (the "Searsport Stash House"), for the purpose of manufacturing, distributing and using one or more controlled substances, and (b) manage and control the Searsport Stash House as a lessee, agent and occupant and make the Searsport Stash House available for use for the purpose of unlawfully manufacturing, storing, distributing and using one or more controlled substances, which offense involved (i) a substance containing cocaine base, a Schedule II controlled substance, and (ii) a substance containing heroin, a Schedule I controlled substance.

Count Seventeen provides as follows:

In or about and between January 2020 and June 2020, both dates being approximate and inclusive, within the District of New Jersey and elsewhere, the defendants DERRICK AYERS, also known as "Dee" and "Mel," FRANKLIN GILLESPIE, also known as "Spazz" and "Frankie Gino," and ANTHONY KENNEDY, also known as "Biggie," together with others, did knowingly and intentionally (a) lease, rent, use and maintain a place, to wit: 101 Roosevelt Avenue, Apartment 214, Carteret, New Jersey (the "Carteret Stash House"), for the purpose of manufacturing, distributing and using one or more controlled substances, and (b) manage and control the Carteret Stash House as a lessee, agent and occupant and make the Carteret Stash House available for use for the purpose of unlawfully manufacturing, storing, distributing and

using one or more controlled substances, which offense involved (i) a substance containing cocaine base, a Schedule II controlled substance, (ii) a substance containing heroin, a Schedule I controlled substance, and (iii) a substance containing fentanyl, a Schedule II controlled substance.

Count Twenty-Two provides as follows:

In or about and between May 2020 and June 2020, both dates being approximate and inclusive, within the District of Maine and elsewhere, the defendant DERRICK AYERS, also known as "Dee" and "Mel," together with others, did knowingly and intentionally (a) lease, rent, use and maintain a place, to wit: 9 Bings Boulevard, Swanville, Maine (the "Swanville Stash House"), for the purpose of manufacturing, distributing and using one or more controlled substances, and (b) manage and control the Swanville Stash House as a lessee, agent and occupant and make the Swanville Stash House available for use for the purpose of unlawfully manufacturing, storing, distributing and using one or more controlled substances, which offense involved (i) a substance containing cocaine base, a Schedule II controlled substance, (ii) a substance containing heroin, a Schedule I controlled substance, and (iii) a substance containing fentanyl, a Schedule II controlled substance.

Count Twenty-Three provides as follows:

In or about and between May 2020 and June 2020, both dates being approximate and inclusive, within the District of Maine and elsewhere, the defendant DERRICK AYERS, also known as "Dee" and "Mel," together with others, did knowingly and intentionally (a) lease, rent, use and maintain a place, to wit: 1189 Horseback Road, Levant, Maine (the "Levant Stash House"), for the purpose of manufacturing, distributing and using one or more controlled substances, and (b) manage and control the Levant Stash House as a lessee, agent and occupant and make the Levant Stash House available for use for the purpose of unlawfully manufacturing, storing, distributing and using one or more controlled substances, which offense involved (i) a substance containing cocaine base, a Schedule II controlled substance, (ii) a substance containing heroin, a Schedule I controlled substance, and (iii) a substance containing fentanyl, a Schedule II controlled substance.

Count Twenty-Four provides as follows:

> In or about June 2020, within the District of Maine and elsewhere, the defendant DERRICK AYERS, also known as "Dee" and "Mel," together with others, did knowingly and intentionally (a) lease, rent, use and maintain a place, to wit: 93 Troy Road, Detroit, Maine (the "Detroit Stash House"), for the purpose of manufacturing, distributing and using one or more controlled substances, and (b) manage and control the Detroit Stash House as a lessee, agent and occupant and make the Detroit Stash House available for use for the purpose of unlawfully manufacturing, storing, distributing and using one or more controlled substances, which offense involved (i) a substance containing cocaine base, a Schedule II controlled substance, (ii) a substance containing heroin, a Schedule I controlled substance, and (iii) a substance containing fentanyl, a Schedule II controlled substance.

Count Twenty-Five provides as follows:

> In or about June 2020, within the District of Maine and elsewhere, the defendant DERRICK AYERS, also known as "Dee" and "Mel," together with others, did knowingly and intentionally (a) lease, rent, use and maintain a place, to wit: 576 Corinth Road, Garland, Maine (the "Garland Stash House"), for the purpose of manufacturing, distributing and using one or more controlled substances, and (b) manage and control the Garland Stash House as a lessee, agent and occupant and make the Garland Stash House available for use for the purpose of unlawfully manufacturing, storing, distributing and using one or more controlled substances, which offense involved (i) a substance containing cocaine base, a Schedule II controlled substance, (ii) a substance containing heroin, a Schedule I controlled substance, and (iii) a substance containing fentanyl, a Schedule II controlled substance.

To convict a defendant of any of these counts, you must unanimously find that the government proved at least one of the two crimes charged for each drug-involved premises count: Section 856(a)(1) or Section 856(a)(2). You must agree on which one or find that the government proved guilt of both.

To find a defendant guilty of maintaining a drug-involved premises in violation of Section 856(a)(1), the government must prove the following three elements beyond a reasonable

doubt:

> First:   the defendant permanently or temporarily opened,
> leased, rented, used, or maintained the place named
> in the Indictment;
>
> Second:   the defendant did so for the purpose of
> manufacturing, distributing, or using one or more
> controlled substances, namely cocaine base, heroin,
> and/or fentanyl; and
>
> Third:   the defendant acted knowingly.

To find a defendant guilty of managing or controlling a place used by others as a drug-involved premises, in violation of Section 856(a)(2), the government must prove the following four elements beyond a reasonable doubt:

> First:   the defendant managed or controlled the place
> named in the Indictment as a lessee, agent, or
> occupant;
>
> Second:   the defendant made available the place to another or
> others for use with or without compensation;
>
> Third:   those others used the place for the purpose of
> manufacturing, storing, distributing, or using a
> controlled substance; and
>
> Fourth:   the defendant acted knowingly and intentionally.

I have already instructed you that heroin and fentanyl are controlled substances. I now additionally instruct you that cocaine base (sometimes referred to as "crack" or "crack cocaine") is a Schedule II controlled substance under federal law.

You should give the terms "open," "lease," "rent," "manage," "control," "make available," and "use" their ordinary, everyday meanings. To "maintain" a place means to exercise significant supervisory control over the activities that occur and the people who are in that place over a period of time. You should consider factors such as how much control the

defendant exercised over the place, the duration of that control, and whether the defendant was responsible for furnishing, repairing, protecting, and providing food and other supplies there.

Regarding the purpose element – which is the second element of Section 856(a)(1) and the third element of Section 856(a)(2) – the government must prove that the drug activity was a significant or important reason.  I have already given you instructions about knowledge and intent, and those instructions apply here.

All six counts I have just discussed charge the substantive drug-related premises offenses, as well as the crimes on an aiding-and-abetting theory.  I have already instructed you on aiding and abetting under federal law, and those instructions apply here.

### O.   COUNTS FOUR AND FIFTEEN: MONEY LAUNDERING OFFENSES

Count Four provides as follows:

> In or about and between January 2016 and June 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL, also known as "Moelek" and "Moe Money," and DERRICK AYERS, also known as "Dee" and "Mel," together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate and foreign commerce, to wit: the transfer and delivery of United States currency, which transactions in fact involved the proceeds of specified unlawful activity, to wit: narcotics trafficking, in violation of Title 21, United States Code, Sections 841(a) and 846, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity and (a) with the intent to promote the carrying on of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i); (b) knowing that the financial transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i); and (c) to avoid one or more transaction reporting requirements under Federal law, to wit: Title 31, United States Code, Section 5313(a), contrary to Title 18, United States Code, Section 1956(a)(1)(B)(ii).

Count Fifteen provides as follows:

> In or about and between June 2019 and June 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL, also known as "Moelek" and "Moe Money," and ANTHONY KENNEDY, also known as "Biggie," together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate and foreign commerce, to wit: interstate and foreign transfers of funds, which transactions in fact involved the proceeds of specified unlawful activity, to wit: narcotics trafficking and narcotics trafficking conspiracy, in violation of Title 21, United States Code, Sections 841(a) and 846, respectively, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i).

I have already instructed you with respect to the law of conspiracy. Those same instructions apply here. With respect to Count Four, the government alleges that the three objects of the defendants' conspiracy are to commit money laundering in violation of Section 1956(a)(1)(A)(i), money laundering in violation of Section 1956(a)(1)(B)(i), and money laundering in violation of Section 1956(a)(1)(B)(ii). As I have explained before, the government need only prove one of the three objects to prove the conspiracy charged in Count Four, although you may alternatively find that multiple objects have been proven. As for Count Fifteen, the government alleges that the object of the defendants' conspiracy is to commit money laundering in violation of Section 1956(a)(1)(A)(i).

I have already instructed you on the elements of those substantive money laundering offenses.

P.     **COUNTS FIVE, SIX, SEVEN, AND ELEVEN: VIOLENT CRIMES IN-AID-OF RACKETEERING**

Counts Five to Seven and Eleven charge defendants MOELEEK HARRELL and DERRICK AYERS with violent crimes in-aid-of racketeering.  I will first discuss the counts related to murder conspiracy in violation of the New York Penal Law.  I will then discuss the counts related to assault in violation of the New York Penal Law.

Conspiracy to Commit Murder In-Aid-Of Racketeering

Count Five provides as follows:

> In or about and between September 2017 and October 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL, also known as "Moelek" and "Moe Money," and DERRICK AYERS, also known as "Dee" and "Mel," together with others, for the purpose of gaining entrance to, and maintaining and increasing position in, the Bully Gang, an enterprise engaged in racketeering activity, did knowingly and intentionally conspire to murder one or more individuals, to wit: John Doe #2, in violation of New York Penal Law Sections 125.25(1) and 105.15.

Count Six provides as follows:

> In or about and between September 2017 and June 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL, also known as "Moelek" and "Moe Money," and DERRICK AYERS, also known as "Dee" and "Mel," together with others, for the purpose of gaining entrance to, and maintaining and increasing position in, the Bully Gang, an enterprise engaged in racketeering activity, did knowingly and intentionally conspire to murder one or more individuals, to wit: members of the rival "Stukes Crew," in violation of New York Penal Law Sections 125.25(1) and 105.15.

The federal statute the defendants are charged with violation, Title 18, United States Code, Section 1959(a)(5) provides that "[w]hoever, . . . for the purpose of gaining entrance to or

82

maintaining or increasing position in an enterprise engaged in racketeering activity, murders . . . any individual in violation of the laws of any State or the United States, or attempts or conspires so to do," shall be guilty of a crime.

I will address the elements of substantive murder in-aid-of racketeering, which is not charged in this case, followed by the elements of conspiracy to commit murder in-aid-of racketeering, which is charged.

Elements of Murder in Aid of Racketeering

To prove the offense of murder in-aid-of-racketeering, the government must establish five elements.

1.      Enterprise

The first element is that an "enterprise" existed and was engaged in or had an effect on interstate or foreign commerce.  I previously defined those terms when discussing Count One, the racketeering charge.  The enterprise must be the one charged in the Indictment, and I have described the charged enterprise earlier in my instructions.  Therefore, to prove the substantive offense, the government must establish that the enterprise – here, the Bully Gang – actually existed and that the enterprise was engaged in or had an effect on interstate or foreign commerce.

2.      Enterprise Engaged in Racketeering Activity

The second element is that the enterprise was engaged in racketeering activity.  Here, the racketeering activities charged in the Indictment include: (a) acts involving murder; (b) offenses involving dealing in controlled substances; and (c) acts relating to engaging in monetary transactions in property derived from specified unlawful activity.  Acts and offenses involving these activities include attempts or conspiracies.

a.      "Engaged in"

For this element, you need only find that the enterprise engaged in at least one of the alleged racketeering activities.  To find a defendant guilty of the substantive offense, you must unanimously agree on at least one of the activities.  You should give the words "engaged in" their ordinary, everyday meaning.  For an enterprise to be engaged in racketeering activity, it is enough to show that the enterprise committed or was planning to commit some racketeering activity within a reasonably short period of time.  In addition, for purposes of the violent crimes in-aid-of racketeering counts, the indictment does not allege, and need not allege, that the defendants personally participated in the racketeering activity.  The government does not contend that the defendants were personally involved in all the racketeering acts.

b.      Racketeering Activity

I have already instructed you on the elements regarding murder offenses in violation of Sections 125.25, 110.00, 105.15, and 20.00, narcotics-related offenses in violation of Sections 841, 846, and 856, and money laundering in violation of Section 1956.  Those instructions apply here.

3.      Position in the Enterprise

The third element of the substantive offense is that the defendant was a knowing member or associate of, or seeking a position in, the enterprise.  I previously instructed you on what it means to "associate."  The defendant must have been a member or associate of the enterprise at the time he allegedly committed the crime of violence charged.  It is not enough to prove that the defendant was doing business with the enterprise; the government must prove that he was actually an associate or member of, or actively seeking membership in, the enterprise.

84

4.      Crime of Violence

The fourth element of the substantive offense is that the defendant committed the alleged crime of violence, namely murder in violation of the New York Penal Law.  I have previously instructed you on the crime of murder in violation of New York Penal Law Section 125.25(1).

5.      Maintain or Increase Position

The fifth element requires the government to prove that the defendant's general purpose in committing the crime of violence was to gain entrance to, or maintain or increase his position in, the enterprise.  You should give the words "maintain" and "increase" their ordinary meanings.

This element is established even if the defendant had a personal motive for committing a crime of violence, so long as he was also motivated by a desire to gain entrance to, or maintain or increase his position in, the enterprise.  But if you find that the defendant was not motivated at all by the desire to gain entrance to, or maintain or increase his position in, the enterprise, then you cannot find him guilty of this substantive offense.

Conspiracy to Commit Murder In-Aid-Of Racketeering

As I noted above, Counts Five and Six charges conspiracy to commit murder in-aid-of racketeering.  I have already instructed you on the elements of conspiracy.

The object of the conspiracy that defendants MOELEEK HARRELL and DERRICK AYERS are charged with in Count Five is the murder of John Doe #2.  The object of the conspiracy that HARRELL and AYERS are charged with in Count Six is the murder of members of the rival crew called the "Stukes Crew."  Again, you can refer to the instructions I previously gave about murder in-aid-of racketeering and murder under New York state law.

Assault-In-Aid-Of Racketeering

Count Seven provides as follows:

> On or about October 1, 2017, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL, also known as "Moelek" and "Moe Money," and DERRICK AYERS, also known as "Dee" and "Mel," together with others, for the purpose of gaining entrance to, and maintaining and increasing position in, the Bully Gang, an enterprise engaged in racketeering activity, did knowingly and intentionally assault with a dangerous weapon John Doe #2 and Jane Doe #1, in violation of New York Penal Law Sections 120.05(2) and 20.00.

Count Eleven provides as follows:

> On or about June 27, 2018, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL, also known as "Moelek" and "Moe Money," and DERRICK AYERS, also known as "Dee" and "Mel," together with others, for the purpose of gaining entrance to, and maintaining and increasing position in, the Bully Gang, an enterprise engaged in racketeering activity, did knowingly and intentionally assault with a dangerous weapon John Doe #1 and Jane Doe #2, individuals whose identities are known to the Grand Jury, in violation of New York Penal Law Sections 120.05(2) and 20.00.

The elements of Counts Seven and Eleven are the same as the substantive offense of murder in-aid-of racketeering I just described, except that the crime of violence in the fourth element is different. Other than the different crime of violence for the fourth element, you must apply the same instructions here.

As to the fourth element, the government must prove beyond a reasonable doubt that the defendant committed assault with a deadly weapon, in violation of New York Penal Law Sections 120.05(2) (assault in the second degree) and 20.00 (aiding and abetting). I have already instructed you on aiding-and-abetting liability under New York Penal Law Section 20.00, and you should follow those instructions here.

86

To prove that the defendant is guilty of assault with a deadly weapon in violation of Section 120.05(2), the government must prove two elements:

> First:   the defendant caused physical injury to another person by means of a deadly weapon; and

> Second:   the defendant did so with the intent to cause physical injury to that person or another person.

I have previously instructed you on intent.  "Deadly weapon" includes any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged.  "Physical injury" means impairment of physical condition or substantial pain.

In addition, Counts Seven and Eleven charge substantive assault in-aid-of racketeering, as well as assault under an aiding-and-abetting theory.  I have already instructed you on aiding and abetting under federal law.

Q.     COUNT NINE: UNLAWFUL POSSESSION, BRANDISHING, AND DISCHARGE OF A FIREARM: DERRICK AYERS

Counts Three, Eight to Nine, Twelve, Eighteen, Twenty, and Twenty-Seven charge various defendants with unlawfully using, possessing, and carrying firearms.

Your deliberations with respect to Count 9 relating to DERRICK AYERS and the shooting of Jonathan Jackson will be affected by your finding as to justification and I will therefore charge you separately on Count Nine. Count Nine provides as follows:

On or about March 3, 2018, within the Eastern District of New York and elsewhere, the defendant DERRICK AYERS, also known as "Dee" and "Mel," together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to a crime of violence and one or more drug trafficking crimes, to wit: the crimes charged in Counts One

87

and Two, and did knowingly and intentionally possess such firearms in furtherance of said crime of violence and drug trafficking crimes, one or more of which firearms was brandished and discharged.

The shooting of Jonathan Jackson was also charged in Count One, Racketeering Act Five, for which I have instructed you that the defense of justification has been properly raised and that in order to find Racketeering Act Five to have been proven, the Government must prove beyond a reasonable doubt that Mr. Ayers was not justified in the shooting of Jonathan Jackson. If you have found that Mr. Ayers was justified in the shooting of Jonathan Jackson and that Racketeering Act Five was not proved on the basis of justification, then your deliberations on Count Nine will only be on the question of whether on March 3, 2018, Mr. Ayers knowingly and intentionally used and carried a firearm in relation to a narcotics related offense. In other words, if you find that Mr. Ayers was justified in the shooting of Jonathan Jackson, the question for you to decide on Count Nine is whether:

On or about March 3, 2018, within the Eastern District of New York and elsewhere, the defendant DERRICK AYERS, also known as "Dee" and "Mel," together with others, did knowingly and intentionally use and carry one or more firearms during and in relation one or more drug trafficking crimes, to wit: the crimes charged in Counts One and Two, and did knowingly and intentionally possess such firearms in furtherance of said drug trafficking crimes, one or more of which firearms was brandished and discharged.

Finally, if you find Mr. Ayers not guilty of Count Nine, you must not consider Count Ten.

[If the jury finds that Mr. Ayers was justified under the New York State parameters for justification (Penal Law §35.15), a further instruction on justification from a federal standpoint is

unnecessary. The New York State justification charge is more exacting than the federal charge in that New York State has a requirement of a duty to retreat under certain circumstances whereas there is no affirmative duty to retreat in federal law. There is no reasonable view of the evidence pursuant to which the jury would find Mr. Ayers justified under a more rigorous standard (New York State law) and then not justified under federal law. On the other hand should the jury find that Mr. Ayers was not justified under state law, then the jury should be instructed on justification under federal law as it relates to Count Nine.]

~~Q.~~   R.      COUNTS THREE, EIGHT, ~~NINE,~~ TWELVE, EIGHTEEN, TWENTY, AND TWENTY-SEVEN: UNLAWFUL POSSESSION, BRANDISHING, AND DISCHARGE OF A FIREARM

I will now proceed to the other counts ~~Counts Three, Eight to Nine, Twelve, Eighteen, Twenty, and Twenty-Seven~~ charg~~ing~~e ~~various~~ defendants with unlawfully using, possessing, and carrying firearms. ~~I will read the seven charges to you now.~~

Count Three provides as follows:

> In or about and between January 2016 and September 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, on occasions other than those described in Counts Eight, Nine, Ten, Twelve, Eighteen, Nineteen, Twenty, Twenty-One and Twenty-Eight of this Superseding Indictment, the defendants MOELEEK HARRELL, also known as "Moelek" and "Moe Money," DERRICK AYERS, also known as "Dee" and "Mel," FRANKLIN GILLESPIE, also known as "Spazz" and "Frankie Gino," and ANTHONY KENNEDY, also known as "Biggie," together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to a crime of violence and one or more drug trafficking crimes, to wit: the crimes charged in Counts One and Two, and did knowingly and intentionally possess such firearms in furtherance of said crime of violence and drug trafficking crimes, one or more of which firearms was brandished and discharged.

Count Eight provides as follows:

> On or about October 1, 2017, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL, also known as "Moelek" and "Moe Money," and DERRICK AYERS, also known as "Dee" and "Mel," together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to a crime of violence, to wit: the crime charged in Count Seven, and did knowingly and intentionally possess such firearms in furtherance of said crime of violence, one or more of which firearms was brandished and discharged.

Count Nine provides as follows:

> On or about March 3, 2018, within the Eastern District of New York and elsewhere, the defendant DERRICK AYERS, also known as "Dee" and "Mel," together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to a crime of violence and one or more drug trafficking crimes, to wit: the crimes charged in Counts One and Two, and did knowingly and intentionally possess such firearms in furtherance of said crime of violence and drug trafficking crimes, one or more of which firearms was brandished and discharged.

Count Twelve provides as follows:

> On or about June 27, 2018, within the Eastern District of New York and elsewhere, the defendants MOELEEK HARRELL, also known as "Moelek" and "Moe Money," and DERRICK AYERS, also known as "Dee" and "Mel," together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to a crime of violence, to wit: the crime charged in Count Eleven, and did knowingly and intentionally possess such firearms in furtherance of said crime of violence, one or more of which firearms was brandished and discharged.

Count Eighteen provides as follows:

On or about April 11, 2020, within the Eastern District of New York and elsewhere, the defendant FRANKLIN GILLESPIE, also known as "Spazz" and "Frankie Gino," together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to a crime of violence and one or more drug trafficking crimes, to wit: the crimes charged in Counts One and Two, and did knowingly and intentionally possess such firearms in furtherance of said crime of violence and drug trafficking crimes, one or more of which firearms was brandished and discharged.

Count Twenty provides as follows:

On or about April 15, 2020, within the Eastern District of New York and elsewhere, the defendants FRANKLIN GILLESPIE, also known as "Spazz" and "Frankie Gino," and ANTHONY KENNEDY, also known as "Biggie," together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to a crime of violence and one or more drug trafficking crimes, to wit: the crimes charged in Counts One and Two, and did knowingly and intentionally possess such firearms in furtherance of said crime of violence and drug trafficking crimes, one or more of which firearms was brandished and discharged.

Count Twenty-Seven provides as follows:

On or about June 25, 2020, within the Eastern District of New York and elsewhere, the defendants DERRICK AYERS, also known as "Dee" and "Mel," FRANKLIN GILLESPIE, also known as "Spazz" and "Frankie Gino," and ANTHONY KENNEDY, also known as "Biggie," together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to a crime of violence and one or more drug trafficking crimes, to wit: the crimes charged in Counts One and Two, and did knowingly and intentionally possess such firearms in furtherance of said drug trafficking crimes and crimes of violence.

To prove the Section 924(c) crime, the government has to establish the following two elements beyond a reasonable doubt:

First:          the defendant committed a crime of violence or a
                drug trafficking crime for which he might be
                prosecuted in a United States court; and

Second:         the defendant either knowingly and intentionally
                used or carried a firearm during and in relation to
                the commission of the crime of violence or drug
                trafficking crime, or knowingly and intentionally
                possessed a firearm in furtherance of that crime.

The federal statute the defendants are charged with violation, ~~Title 18, United States~~ ~~Code, Section 1959(a)(3) provides that "[w]hoever, . . . for the purpose of gaining entrance to or~~ ~~maintaining or increasing position in an enterprise engaged in racketeering activity, . . . assaults~~ ~~with a dangerous weapon . . . any individual in violation of the laws of any State or the United~~ ~~States," shall be guilty of a crime.~~ [Wrong statute.]

Crime of Violence or Drug Trafficking

The first element is that the defendant committed a crime of violence or drug trafficking crime for which he might be prosecuted in a court of the United States.  The crimes of violence and drug trafficking crimes identified in Counts Three, Nine, Eighteen, Twenty, and Twenty-Seven are Count One, which charges racketeering, and Count Two, which charges narcotics trafficking conspiracy.  The crime of violence identified in Count Eight is Count Seven, which charges assault in-aid-of racketeering.  The crime of violence identified in Count Twelve is Count Eleven, which charges assault in-aid-of racketeering.  It is up to you to determine that the government has proven beyond a reasonable doubt that a given defendant committed any of the acts and crimes charged in Counts One, Two, Seven, and Eleven.

Count One charges the following racketeering acts: Racketeering Acts Five, Seven(B), Eight(B), Twelve, and Thirteen.  I instruct you that each of those five acts is a crime of violence.  I also instruct you that Counts Seven and Eleven are crimes of violence.  Count One also charges

narcotics-related racketeering acts: Racketeering Acts One, Six, and Eleven.  I instruct you that each of those three acts is a drug trafficking crime for purposes of these instructions.

I also instruct you that Count Two is a drug trafficking crime as a matter of law.

[Defendants maintain their pretrial argument that RICO (Count One) is not categorically a crime of violence. In addition, defendants maintains that murder and conspiracy to commit murder (Racketeering Acts 7 and 8) are not categorically crimes of violence.]

<u>Using, Possessing, or Carrying a Firearm</u>

The second element that the government must prove beyond a reasonable doubt is that the defendant knowingly used or carried a firearm during and in relation to a crime of violence or drug trafficking crime charged as a racketeering act in Count One, or to Count Two, which by itself is a drug trafficking crime, or possessed a firearm in furtherance of the commission of the crime.

I have previously instructed you on the meaning of possession.  A firearm means any weapon, including a gun, that is designed to or may be readily converted to expel a projectile by the action of an explosion.

To prove the second element beyond a reasonable doubt, the government must prove either "use," "carrying," or "possession."

To prove that the defendant used a firearm during and in relation to a crime of violence or drug trafficking crime, the government must show that he actively employed the firearm in some way to further the crime.

To prove carrying, the government must prove that he had the weapon within his control in such a way that it helped the commission of the crime, and that the firearm was an integral part of the commission of the crime.  A defendant does not necessarily have to hold a firearm

physically.  If you find that the defendant had control over the place where the firearm was located and had the power and intention to exercise that control over the firearm in such a way that it furthered the commission of the crime, you may find that the government has proven that he carried the weapon.

To prove that the firearm was used or carried during and in relation to the commission of a crime of violence or drug trafficking crime, the government must prove that the firearm was an integral part of the commission of the crime, and that the firearm furthered or facilitated the crime.  It is not sufficient that the carrying was inadvertent or incidental, or for some purpose other than furthering or facilitating the crime.

The second element may also be satisfied by proof that the defendant possessed the firearm in furtherance of a crime of violence or drug trafficking crime.  The mere possession of a firearm at the scene of a crime is not sufficient.  The firearm must have played some part in furthering the crime.

In satisfying the second element, you must also find that the defendant used, possessed, or carried the firearm knowingly and intentionally.  I have told you what those terms mean.  The defendant must know that the weapon was a firearm.

Aiding and Abetting

In addition, all the Section 924(c) counts charge the substantive crime, as well as aiding-and-abetting liability.  I have already instructed you on aiding and abetting under federal law, and those instructions apply here.

However, I will tell you additional specific instructions regarding aiding and abetting in the context of Section 924(c).  It is not enough to simply find beyond a reasonable doubt that the defendant knew a firearm would be used, possessed, or carried.  There are two additional

requirements that apply.  The government must prove beyond a reasonable doubt that the defendant took an affirmative act in furtherance of the Section 924(c) offense and had the intent of facilitating commission of the offense.

An affirmative act is an act used to help, assist, or make possible any part of the offense. In this context, the defendant takes the necessary affirmative act if he facilitates either (1) the use, possession, or carrying of the firearm or (2) the commission of an underlying crime of violence or drug trafficking crime.  It is not necessary that the defendant facilitate both firearm use and commission of the underlying crime.

As to intent, my prior instructions apply.  In the context of aiding and abetting, a defendant acts with the requisite intent if the government proves beyond a reasonable doubt that he had advance knowledge that a confederate would use or carry a firearm during and in relation, or possess a firearm in furtherance of, a crime of violence or drug trafficking crime.  "Advance knowledge" means knowledge of the firearm's presence at a time when the accomplice had a realistic opportunity to attempt to alter the plan or walk away~~at a time the person can attempt to alter the plan or withdraw~~.[10]

Additional Findings

If you find that a defendant is using, possessing, or carrying a firearm in violation of

---

[10] *See Rosemond v. United States*, 134 S. Ct. 1240, 1249–50 (2014) (Advance knowledge "means knowledge at a time the accomplice can do something with it—most notably, opt to walk away"); *United States v. Prado*, 815 F.3d 93, 102 (2d Cir. 2016) (Jury instruction erroneous because it "permitted the jury to convict defendants of the crime even if they 'kn[ew] nothing of a gun until it appear[ed] at the scene,' and even if, at the time they learned about the gun, they had already completed their assistance or had 'at that late point no realistic opportunity to quit the crime.'") (quoting *Rosemond*, 134 S.Ct. at 1249).

Section 924(c), that may trigger one or more questions for you to answer on the verdict sheet.  I will discuss those questions now.

For Counts Eight, Nine, Twelve, Eighteen, and Twenty as to all charged defendants and for Count Three as to defendants MOELEEK HARRELL, DERRICK AYERS, and FRANKLIN GILLESPIE, if you find the defendant guilty as to that particular count, you must decide whether the government has proven beyond a reasonable doubt that the defendant or a confederate brandished the firearm.  To brandish a firearm means to display all or part of the firearm or otherwise make the presence of the firearm known to another person to intimidate that person, regardless of whether the firearm is directly visible to that person.

Relatedly, if you find that a defendant is guilty of one of those Section 924(c) use, possession, or carrying crimes on an aiding-and-abetting theory, you must also determine whether the defendant is guilty of aiding and abetting the brandishing of the firearm.  The defendant is guilty of aiding and abetting the brandishing if he had advance knowledge that a confederate intended to display or make the presence of the firearm known for purposes of intimidation.  But the defendant need not have advance knowledge that a confederate would actually brandish a firearm.

Separately, for Counts Eight, Nine, Twelve, Eighteen, and Twenty as to all charged defendants and for Count Three as to defendants MOELEEK HARRELL and DERRICK AYERS, if you find the defendant guilty as to that particular count, you must decide whether the government has proven beyond a reasonable doubt that the defendant or a confederate discharged the firearm.  The term "discharged" means that the firearm was fired, even if accidentally.

Relatedly, if you find that the defendant is guilty of one of those Section 924(c) use,

possession, or carrying crimes on an aiding-and-abetting theory, you must also determine whether the defendant is guilty of aiding and abetting the discharge of the firearm.  To aid and abet the possession of a firearm that was discharged, the defendant need not have advance knowledge that the discharge would occur.

[Defendant objects to this charge and requests his previously proposed charge.]

### ~~R.~~Q.   COUNTS TEN, NINETEEN, AND TWENTY-ONE: CAUSING DEATH THROUGH USE OF A FIREARM

Count Ten provides as follows:

> On or about March 3, 2018, within the Eastern District of New York and elsewhere, the defendant DERRICK AYERS, also known as "Dee" and "Mel," together with others, in the course of a violation of Title 18, United States Code, Section 924(c), to wit: the crime charged in Count Nine, did knowingly and intentionally cause the death of a person through the use of a firearm, which killing was a murder as defined in Title 18, United States Code, Section 1111(a), in that the defendant, together with others, with malice aforethought, did unlawfully kill Jonathan Jackson willfully, deliberately, maliciously and with premeditation.

Count Nineteen provides as follows:

> On or about April 11, 2020, within the Eastern District of New York and elsewhere, the defendant FRANKLIN GILLESPIE, also known as "Spazz" and "Frankie Gino," together with others, in the course of a violation of Title 18, United States Code, Section 924(c), to wit: the crime charged in Count Eighteen, did knowingly and intentionally cause the death of a person through the use of a firearm, which killing was a murder as defined in Title 18, United States Code, Section 1111(a), in that the defendant, together with others, with malice aforethought, did unlawfully kill Paul Hoilett willfully, deliberately, maliciously and with premeditation.

Count Twenty-One provides as follows:

> On or about April 15, 2020, within the Eastern District of New York and elsewhere, the defendants FRANKLIN GILLESPIE, also known as "Spazz" and "Frankie Gino," and ANTHONY

KENNEDY, also known as "Biggie," together with others, in the course of a violation of Title 18, United States Code, Section 924(c), to wit: the crime charged in Count Twenty, did knowingly and intentionally cause the death of a person through the use of a firearm, which killing was a murder as defined in Title 18, United States Code, Section 1111(a), in that the defendants, together with others, with malice aforethought, did unlawfully kill Mike Hawley willfully, deliberately, maliciously and with premeditation.

Title 18, United States Code, Section 924(j) provides, in relevant part, that "[a] person who, in the course of a violation of [Title 18, United States Code, Section 924(c)], causes the death of a person through the use of a firearm, shall[,] . . . if the killing is a murder (as defined in [Title 18, United States Code, Section 1111])," be guilty of a crime.  Section 1111(a) provides, in relevant part, that murder is the unlawful killing of a human being with malice aforethought.

Unlawful Killing

The first element is that the defendant caused the death of the victim identified in the Indictment.  It is the government's burden to prove that the charged defendants inflicted an injury or injuries upon the victim from which the victim died.

Malice Aforethought

The second element is that the defendant acted with malice aforethought.  Malice is the state of mind that would cause a person to act without regard to the life of another.  To satisfy this element, the defendant must have acted consciously, with the intent to kill another person. The government must prove that the defendant acted willfully.  I have already instructed you on willfulness.  .

Offense Occurred as a Consequence of the Crime of Violence or Drug Trafficking Crime

The third element is that the victim's death occurred as a consequence of, and in the course of, the defendant knowingly and intentionally committing the crime of using a firearm in

relation to the crime of violence or drug trafficking crime charged in the Indictment.  As I explained earlier, Racketeering Acts Five, Seven(B), Eight(B), Twelve, and Thirteen of Count One are crimes of violence.  Count Two and Racketeering Acts One, Six, and Eleven of Count One are drug trafficking crimes.

It is sufficient for the government to prove that the use of the firearm and resulting death occurred "during and in relation to" at least one of the crimes of violence or drug trafficking crimes, meaning that the murder and at least one of those crimes were both part of a continuous transaction or chain of events.

In addition, Counts Ten, Nineteen, and Twenty-One charge a substantive Section 924(j) offense, as well as aiding-and-abetting liability.  I have already given you general instructions as to aiding and abetting under federal law, as well as the specific instructions about aiding-and-abetting liability for Section 924(c) offenses.

[Defendant objects to this instruction and requests his previously proposed instruction.]

### S.R.   COUNTS TWENTY-SIX AND TWENTY-EIGHT: FELON IN POSESSION OF A FIREARM

I now turn to the final category of charges in the Indictment.

Count Twenty-Six provides as follows:

On or about June 25, 2020, within the District of New Jersey and elsewhere, the defendant ANTHONY KENNEDY, also known as "Biggie," together with others, knowing that he had previously been convicted in a court of one or more crimes punishable by a term of imprisonment exceeding one year, did knowingly and intentionally possess in and affecting commerce a firearm, to wit: a .40-caliber Smith & Wesson semi-automatic pistol bearing serial number HXR1594.[11]

---

[11] County Twenty-Six was dismissed on the government's motion. *See* Tr. 480.

Count Twenty-Eight provides as follows:

> On or about September 3, 2020, within the Eastern District of New York and elsewhere, the defendant FRANKLIN GILLESPIE, also known as "Spazz" and "Frankie Gino," together with others, knowing that he had previously been convicted in a court of one or more crimes punishable by a term of imprisonment exceeding one year, did knowingly and intentionally possess in and affecting commerce one or more firearms, to wit: (a) one nine-millimeter Hi-Point Model C9 semi-automatic pistol bearing serial number P1335925, (b) one nine-millimeter semi-automatic pistol bearing serial number BGPX376, and (c) one nine-millimeter MasterPiece Arms pistol bearing serial number F10659.

For you to find the defendant guilty of a Section 922(g)(1) offense, the government must prove each of the following elements beyond a reasonable doubt:

First: the defendant knew that he had been convicted, in any court, of a crime punishable by imprisonment for a term exceeding one year;

Second: the defendant knowingly and intentionally possessed one or more firearms charged in the Indictment; and

Third: the firearm or firearms were shipped and transported in interstate or foreign commerce prior to the defendant's possession of them.

I have already instructed you on the meanings of knowledge, intent, possession, firearm, interstate commerce, and foreign commerce.

Regarding the first element, the defendants have stipulated to the fact that they knew before the date alleged in their respective counts that they were convicted in a court of a crime punishable by imprisonment for exceeding one year.  Accordingly, you should regard this stipulated fact as true.  [Defendants object to the court essentially directing a partial verdict with respect to the first element. It is not necessary or proper.] You have heard a stipulation regarding the defendants' prior convictions. I instruct you that the prior convictions that are an element of

the crimes charged in Counts Twenty-Six and Twenty-Eight are only to be considered by you for the fact that those convictions exist, and not for any other purpose.  You should not speculate as to what the prior conviction was for.  And you may only consider the prior conviction for the limited purpose of determining whether this first element of this count is satisfied; you may not consider it with respect to any other counts, or in deciding facts that are in dispute in this case, including whether the government has proved the other elements of this charge

Regarding the second element, I have previously instructed you as to the definitions of "firearm" and "possession."

The third element is the requirement that the firearm be in or affecting interstate commerce.  This means that the government must prove that at some point prior to the defendant's possession, the firearm traveled – meaning that it was shipped or transported – in interstate or foreign commerce.  The government may meet its burden with respect to this element by proving that any time prior to the date charged in the Indictment, the firearm crossed a state line or international border.

In addition, Counts Twenty-Six and Twenty-Eight charge substantive possession, as well as possession under an aiding-and-abetting theory.  I have already given you general instructions as to aiding and abetting under federal law.

## III.   GENERAL REMARKS DURING DELIBERATIONS

### A.   DUTY TO CONSULT & NEED FOR UNANIMITY

Now that I have outlined for you the rules of law applicable to the charge in this case and the processes by which you should weigh the evidence and determine the facts, I will give you some guidance for use in your deliberations.

You are about to go into the jury room and begin your deliberations.  Your function, to

reach a fair conclusion from the law and the evidence, is a vital one.  If the government succeeds in meeting its burden of proof, your verdict should be guilty; if it fails, it should be not guilty.

Each of you must decide the case for yourself, after consideration of the evidence in this case with your fellow jurors.  You should not hesitate to change an opinion that, after discussion with your fellow jurors, appears erroneous.  That is the very purpose of jury deliberation – to discuss and consider the evidence; to listen to the arguments of fellow jurors; to present your individual views; to consult with one another; and to reach an agreement based solely and wholly on the evidence – if you can do so without violating your own individual judgment.

Your verdict must be unanimous.  That is, all of you must ultimately reach the same conclusion as to each of the twenty-six charges, although you can reach a unanimous verdict of not guilty on one or more charges and guilty on the other charges.  However, if, after carefully considering all the evidence and the arguments of your fellow jurors, you entertain a conscientious view that differs from the others, you are not to yield your conviction simply because you are outnumbered.  Your final vote must reflect your conscientious judgment as to how the issues should be decided.

### B.    COMMUNICATIONS WITH THE LAWYERS AND THE COURT

No member of the jury should attempt to communicate with any lawyer involved in this case.  As I instructed you in at the beginning of trial, don't even pass the time of day, or say "hello" or "good-bye."  I am also instructing the lawyers not to speak to you, not to acknowledge you, and not even to greet you.

No member of the jury should attempt to communicate with me or with any court personnel by any means other than a signed writing.  I will appoint a foreperson, and all communication should be in writing, signed by the foreperson, by using their juror number only,

and given to one of the Court Security Officers.  I will respond to any questions or requests you have as promptly as possible by having you return to the courtroom so I can speak with you all in person.  I will not communicate with any member of the jury on any subject touching on the merits of this case other than here in open court.

In any event, do not tell me or anyone else how the jury stands numerically on the issue of the defendants' guilt, even in open court, until after a unanimous verdict is reached.

### C.        RIGHT TO SEE EXHIBITS AND HEAR TESTIMONY

Most of the exhibits will be sent into the jury room with you.  If during your deliberations you want to see any of the exhibits that are not already available to you in the jury room, you may make a request in writing and give it to the Court Security Officer.  If you find you need to hear a portion of the testimony read back to you, this can also be done.  Please be as specific as possible when you make your request.  Tell us who the witness is and what particular topic you need to hear read back to you, so that it is easier and faster for us to find.

When you have reached a verdict, please send a note signed by your foreperson that you have reached a verdict.  Do not indicate in the note what the verdict is.  I have prepared a Verdict Sheet that you will have with you in the jury room.  Beneath each act or count is a space marked "proved" or "not proved" or "guilty" or "not guilty."  Your verdict as to each act or count must be recorded on the Verdict Sheet.

You may not infer from the wording of the question, or from anything that I have said or say in instructing you concerning the question, that it is the Court's view that your answer to the question should be one way or the other.  After the Verdict Sheet is completed, the foreperson should sign and date the Verdict Sheet and return the written Verdict Sheet to the deputy clerk.

103

**D.**     **FINAL COMMENTS**

Again, I remind you that your final vote must reflect your conscientious conviction as to how the issues should be decided.  Your verdict must be unanimous.

Remember that the parties and the Court are relying on you to give full and conscientious deliberation and consideration to the issues and evidence before you.  Your oath sums up your duty, and that is: without fear or favor, you will truly try the issues between these parties according to the evidence given to you in court and the laws of the United States.